No *Shepard's* Signal™
As of: November 25, 2019 5:08 PM Z

# *Winebarger v. Pa. Higher Educ. Assistance Agency*

United States District Court for the Central District of California

August 21, 2019, Decided; August 21, 2019, Filed

CV 19-1503-JFW(RAOx)

**Reporter**
2019 U.S. Dist. LEXIS 196821 *; __ F. Supp. 3d __; 2019 WL 6111730

Lisa Winebarger-v-Pennsylvania Higher Education Assistance Agency, et al.

## Core Terms

allegations, qualifying, loans, Local Rule, ripeness, borrowers, preempted, claim for relief, leave to amend, servicers, fail to state a claim, motion to dismiss, futile, class certification, state law, preemption, state law claim, implied-in-fact, quotations, contracts, courts, student loan, forgiveness, deadline, parties, breach of fiduciary duty, prudential, tally, conflict preemption, alleged breach

**Counsel:** [*1] For Lisa Winebarger, on behalf of herself and all others similarly situated, Plaintiff: Thomas D Warren, LEAD ATTORNEY, Jonathan A Sorkowitz, PRO HAC VICE, Janine Felicia Cohen, Pierce Bainbridge Beck Price and Hecht LLP, Los Angeles, CA.

For Jenise Overmier, Peter Gannon, Plaintiffs: Jonathan A Sorkowitz, PRO HAC VICE, Pierce Bainbridge Beck Price and Hecht LLP, Los Angeles, CA.

For Pennsylvania Higher Education Assistance Agency, Defendant: John C Grugan, Thomas F Burke, PRO HAC VICE, Mark Samuel Kokanovich, LEAD ATTORNEY, Ballard Spahr LLP, Phoenix, AZ.

For Nelnet, Inc., Nelnet Servicing, LLC, Defendants: Jonathan Charles Sandler, Brownstein Hyatt Farber Schreck LLP, Los Angeles, CA.

**Judges:** HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE.

## Opinion

**CIVIL MINUTES -- GENERAL**

**PROCEEDINGS (IN CHAMBERS): ORDER**

GRANTING DEFENDANT NELNET SERVICING, LLC AND NELNET, INC.'S MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT PURSUANT TO *F.R.C.P. 12(b)(1)*, *12(b)(6)*, AND *12(f)(2)* [filed 7/3/19; Docket No. 54]; and

ORDER GRANTING DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL *RULES 12(b)(1)* AND *12(b)(6)* [filed 7/12/19; Docket No. 60]

On July 3, 2019, Defendants Nelnet Servicing, [*2] LLC and Nelnet, Inc. (collectively, "NelNet") filed a Motion to Dismiss and Strike First Amended Complaint Pursuant to *F.R.C.P. 12(b)(1)*, *12(b)(6)*, and *12(f)(2)* ("Motion to Dismiss"). On July 15, 2019, Plaintiff Lisa Winebarger ("Winebarger") filed her Opposition. On July 22, 2019, NelNet filed a Reply. On July 12, 2019, Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") filed a Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal *Rules 12(b)(1)* and *12(b)(6)* ("Motion to Dismiss"). On July 22, 2019, Plaintiffs Winebarger, Jenise Overmier ("Overmier"), and Peter Gannon ("Gannon") (collectively, "Plaintiffs") filed their Opposition. On July 29, 2019, PHEAA filed a Reply. Pursuant to *Rule 78 of the Federal Rules of Civil Procedure* and *Local Rule 7-15*, the Court found these matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's August 12, 2019 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I. Factual and Procedural Background**

**A. Factual Background**

### 1. The HEA and the Direct Loan Program

Under the *Higher Education Act ("HEA")*, the United States Department of Education ("DOE") **[*3]** has the authority to issue a variety of federal loans and grants to student borrowers. *See 20 U.S.C. §§ 1071-1099c*. In the 1990s, the federal government began originating loans under the William D. Ford Direct Loan Program ("Direct Loan Program"). *See 20 U.S.C. §§ 1087a-1087j*; *see also* First Amended Complaint ("FAC"), ¶ 46. Congress directed DOE to enter into contracts for "servicing" these loans and "such other aspects of the direct student loan program as the Secretary determines are necessary." *20 U.S.C. § 1087f(a)*, *(b)(2)*, and *(4)*. Every aspect of the Direct Loan Program is highly regulated by DOE, including administration of loan repayment (*34 C.F.R. §§ 682.209* and *685.208*), income-based repayment plans (*34 C.F.R. §§ 682.215* and *685.209*), deferments and forbearances (*34 C.F.R. §§ 682.210-211* and *685.204-205*), and "a carefully crafted disclosure regime specifying what information must be provided [to student loan borrowers]" (83 Fed. Reg. at 10621). DOE has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its legal obligations or its contract with DOE. *34 C.F.R. § 682.700(a)*.

### 2. The PSLF Program

The Public Service Loan Forgiveness Program ("PSLF") was created by Congress in 2007 and provides a conditional opportunity for student borrowers to seek forgiveness of their student loan balance. *See 20 U.S.C. § 1087e(m)*; *34 C.F.R. § 685.219*; *see also* FAC, ¶¶ 48-60. **[*4]** Under the PSLF, the federal government will forgive any balance due on qualifying Direct Loans after: (a) 120 on-time payments; (b) made under a qualifying repayment plan; (c) while the borrower is working full-time; (d) for a qualifying public-service employer. *34 C.F.R. § 685.219*. Qualifying repayment plans include, among others, Income-Driven Repayment ("IDR") plans. FAC, ¶ 61.

### 3. The Loan Servicing Agreement Between DOE and PHEAA

In 2009, after a competitive process, PHEAA was selected by DOE to service federal loans and grants nationally. Under DOE's contract with PHEAA (the "Servicing Contract"), PHEAA services loans issued under the Direct Loan Program. In 2012, DOE awarded PHEAA an exclusive contract to administer the PSLF Program. FAC, ¶ 40. DOE monitors PHEAA's performance under the Servicing Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices. PHEAA is responsible for resolving all deficiencies identified during those audits and implementing corrective action plans as necessary.

### 4. Plaintiffs' Federal Student Loans and Qualifying Payment History

Plaintiffs are borrowers who have obtained their loans under the Direct Loan **[*5]** program. FAC, ¶¶ 13, 24, and 30. Plaintiffs' Direct Loans are governed by standardized Master Promissory Notes ("MPNs") that they entered into with DOE when they obtained their loans. FAC, ¶ 49 and Exhibits ("Exh.") 2-9. The MPNs were developed by DOE pursuant to instructions from Congress. *See 20 U.S.C. §§ 1082(m)(1)(D)*, *1087e(a)(1)*. PHEAA is not a party to the MPNs between Plaintiffs and DOE.

Winebarger has been enrolled in a PSLF-eligible IDR plan for her Direct Loans since April 2013. FAC, ¶ 19. Overmier has been enrolled in a PSLF-eligible IDR plan for her Direct Loans since December 2014. FAC, ¶ 30. Gannon has been enrolled in a PSLF-eligible IDR plan for his Direct Loans since October 2015. FAC, ¶ 119.

Under the terms of PSLF, borrowers can only make one qualifying payment per month. As a result, each of the Plaintiffs are many years away from reaching the 120 qualifying payment threshold for PSLF eligibility. As of February 2019, Winebarger was at least 61 months away from making 120 qualifying payments.[1] FAC, ¶ 115. As of April 2019, Overmier was at least 71 months away from making 120 qualifying payments.[2] FAC, ¶ 134. As of October 2018, Gannon was at least 84 months away from making 120 qualifying payments.[3] FAC, **[*6]** ¶ 121. Thus, the earliest any

---

[1] Winebarger's loans were initially serviced by ACS Education Services and then transferred to Nelnet in July 2013. FAC, ¶¶ 101-103. When Winebarger's loans were transferred to NelNet, they were placed in a 60-day administrative forbearance status, which ended in September 2013. FAC, ¶ 104. Winebarger was never advised of the forbearance status. FAC, ¶ 104. In July 2016, Winebarger submitted an Employment Certification Form ("ECF"), which caused her loans to be transferred to PHEAA in August 2016. FAC, ¶ 107.

[2] Overmier's loans have been serviced by PHEAA since their inception. FAC, ¶ 128.

[3] Gannon's loans have been serviced by PHEAA since he began repaying them. FAC, ¶ 117. own, (2) presents a claim arguably failing outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public

Plaintiff will be eligible for loan forgiveness is late 2023.

As the loan servicer for Plaintiffs' Direct Loans, PHEAA provides a monthly tally of each Plaintiff's qualifying payments. FAC, ¶¶ 111, 112, 118, and 127. Plaintiffs allege that these tallies are incorrect because they fail to account for all of their qualifying payments. FAC, ¶¶ 115, 121, and 127. For example, Overmier alleges that she made 49 qualifying payments compared to PHEAA's tally of 45 (of the 120 required payments). FAC, ¶ 134. Winebarger indicates that although her qualifying payment tally was previously incorrect, it now reflects the correct number of qualifying payments. FAC, ¶¶ 114 and 116.

Plaintiffs allege that PHEAA's tallies have caused them harm because they have "been unable to make rational and informed decisions as to whether and when to consider private sector (*i.e.*, non-PSLF eligible) employment." FAC, ¶¶ 163, 169, 177, 185, 194, 199, and 204. However, Plaintiffs also allege that because of their loan interest accruals to date, they do "not realistically have the freedom to look beyond employment at PSLF-eligible covered employers until their loan is forgiven." FAC, **[*7]** ¶¶ 116 and 135. Plaintiffs also allege that they "will be required to make more student loan payments than they otherwise would have to make because they have not been credited with the full amount of qualifying payments that they have made." *See, e.g.*, FAC, ¶¶ 124, 134, 163, and 169.

**B. Procedural Background**

On February 28, 2019, Winebarger filed a Complaint against PHEAA and NelNet, Inc. On June 7, 2019, Plaintiffs filed the First Amended Complaint that added Overmier and Gannon as plaintiffs and NelNet Servicing, LLC as a defendant. The First Amended Complaint alleges the following: (1) Plaintiffs allege a negligence claim against PHEAA and Winebarger alleges a negligence claim against NelNet; (2) Plaintiffs allege a breach of fiduciary duty claim against PHEAA and Winebarger alleges a breach of fiduciary duty claim against NelNet; (3) Plaintiffs allege a breach of contract claim against PHEAA and Winebarger alleges a breach of contract claim against NelNet; (4) Plaintiffs allege a breach of implied-in-fact contract claim against PHEAA and Winebarger alleges a breach of implied-in-fact contract claim against NelNet; (5) Plaintiffs allege a violation of the Equal Credit Opportunity **[*8]** Act ("ECOA"), 15 U.S.C. § 1691e, claim against PHEAA; (6) Winebarger alleges an unfair and deceptive acts and practices violation the California Unfair Competition Law, California Business & Professions Code § 17200 ("UCL"), claim against PHEAA and NelNet; and (7) Overmier and Gannon allege an unfair and deceptive acts and practices violating the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3905(k) ("CPPA"), against PHEAA.

**II. Legal Standard**

**A. Rule 12(b)(1)**

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. *See* White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true. *See, e.g.*, Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the **[*9]** motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." White, 227 F.3d at 1242 (internal citation omitted); *see also* Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (9th Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." Augustine v. U.S., 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action.

---

significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. *See* In re Newcare Health Corp. 244 B.R. 167, 170 (1st Cir. BAP 2000).

See *Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)*; *Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989)*.

**B. Rule 12(b)(6)**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper **[*10]** only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc., 922 F. Supp. 299, 304 (C.D. Cal. 1996)* (quoting *Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988))*. However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g.*, *Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998)*. "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology, 922 F. Supp. at 304* (citing *Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)* *cert. denied*, 454 U.S. 1031, 102 S. Ct. 567, 70 L. Ed. 2d 474 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990)* (citations omitted). However, a court may consider material which is properly submitted as **[*11]** part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)*.

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc., 957 F.2d 655, 658 (9th Cir. 1992)*. However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987)* ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**C. Rule 12(f)**

Federal Rule of Civil Procedure 12(f) provides that "on motion made by a party [ ] before responding to the pleading," the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded . . .. 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." **[*12]** *Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.1993)* (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d, § 1382, pp. 706-07, 711 (1990)), *rev'd. on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)*. "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)*. "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Id.*; *see also Clement v. American Greetings Corp., 636 F. Supp. 1326, 1332 (S.D. Cal. 1986)* (Motions to strike are "generally viewed with disfavor and not frequently granted."). "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief." *Id.* (quoting *Securities & Exchange Comm'n v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995))*. "In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party, and resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in defendant's favor. This is particularly true if the moving party can demonstrate no resulting prejudice." *Id.* (internal citations omitted).

**III. Discussion**

**A. Plaintiffs' Class Allegations Are Stricken**.

*Rule 23 of the Federal Rules of Civil Procedure* provides that this Court must determine whether to certify a class "[a]t an early [*13] practicable time after a person sues or is sued as a class representative." *Fed. R. Civ. P. 23(c)(1)(A)*. The Central District of California has, in an attempt to comply with requirements of *Federal Rule of Civil Procedure 23*, adopted *Local Rule 23-3* which provides, in pertinent part:

> Within 90 days after service of a pleading purporting to commence a class action other than an action subject to the *Private Securities Litigation Reform Act of 1995, P.L. 104-67, 15 U.S.C. § 77z-1 et seq.*, the proponent of the class shall file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court.

*Local Rule 23-3* and *Federal Rule of Civil Procedure 23(c)(1)* share an important purpose. That purpose is to give a clear definition to the parameters of the putative class, to outline the claims involved in the class action and to apprise the defendants of their potential liability as soon as practicable. As other courts have noted, "[a] timely motion for class certification is premised on sound practical considerations," including preservation and protection of the putative class members' claims. *See Jones v. Hartford Ins. Co. of the Midwest, 243 F.R.D. 694, 695 (N.D. Fla. 2006)*.

The Court has discretion to strike class allegations for failure to comply with *Local Rule 23-3*. *See, e.g., Watson v. Schwarzenegger, 347 Fed. Appx. 282, 2009 WL 1956222, at *1 (9th Cir. June 23, 2009)* (finding that the district court did not abuse its discretion in enforcing *Local Rule 23-3*); *Verner v. Swiss II, LLC, 2010 U.S. Dist. LEXIS 4443, 2010 WL 99084, at *2 (C.D. Cal. Jan. 6, 2010)* ("Because Plaintiff failed to comply with [*14] *Local Rule 23-3*'s ninety-day time limit for filing motions for class certification, the Court strikes the class allegations in Plaintiff's First Amended Complaint."); *see also Burkhalter v. Montgomery Ward and Co., Inc., 676 F.2d 291 (8th Cir. 1982)* (affirming district court's striking of class allegations because of the plaintiff's failure to comply with court order setting deadline for filing of motion for class certification); *Joseph N. Main P.C. v. Electronic Data Systems Corp., 168 F.R.D. 573 (N.D. Tex. 1996)* (striking class allegations for failing to comply with the Local Rules' requirement that such motions be filed within ninety days of filing of the complaint).

The Complaint in this action was filed on February 28, 2019 (Docket No. 1), and service of the Complaint was completed on March 8, 2019 (Docket Nos. 16 and 17). Although seeking to represent a putative class, Plaintiffs violated *Local Rule 23-3* by failing to file a motion for class certification within ninety days of serving Defendants or seeking relief from that deadline. In fact, Plaintiffs simply ignored *Local Rule 23-3*. In their Opposition, Plaintiffs argue that they are excused from complying with *Local Rule 23-3* because the Ninth Circuit invalidated *Local Rule 23-3* in *ABS Entertainment, Inc. v. CBS Corp., 908 F.3d 405, 427 (9th Cir. 2018)*. The Court disagrees. Although the Ninth Circuit held that the strict application of a ninety day deadline under *Local Rule 23-3* based on the facts of that particular case was incompatible [*15] with *Federal Rules of Civil Procedure 23*, it did not explicitly invalidate or strike *Rule 23-3*. Until the Central District eliminates or modifies *Local Rule 23-3*, it remains enforceable so long as it is applied consistent with the Ninth Circuit's holding in *ABS*.[4] "Local rules are 'laws of the United States,'" and are "valid if . . . 'not inconsistent' with the Federal Rules of Civil Procedure.'" *Marshall v. Gates, 44 F.3d 722, 724 (9th Cir.1995)* (quoting *United States v. Hvass, 355 U.S. 570, 575, 78 S. Ct. 501, 2 L. Ed. 2d 496 (1958)* and *Fed. R. Civ. P. 83*).

In this case, the Court has never been asked to consider or apply *Local Rule 23-3* because Plaintiffs neither filed a motion for class certification nor requested an extension of time to do so prior to the expiration of the ninety day deadline. In fact, it has been nearly six months since this case was filed and Plaintiffs have failed to give this Court any indication as to when it *might* file a motion for class certification.[5] Moreover, despite having had nearly six months to do so, it does not appear that Plaintiffs have begun to propound discovery that may be necessary to prepare their class certification motion.[6] Plaintiffs' failure to comply with *Local Rule 23-3* as well as the Court's Scheduling and Case Management Order ("CMO")[7] will undoubtedly result in a request to continue the March 2020 trial date set by the Court, which will interfere with the Court's ability [*16] to manage its own docket and "secure the just, speedy, and inexpensive determination" of this action. *See Fed. R. Civ. Pro. 1*; *see also*

---

[4] Although Plaintiffs argue that the 90 day deadline has not yet expired, *Local Rule 23-3* clearly states that the 90 day deadline runs from the service of a complaint commencing a class action.

[5] For example, in the Joint *Rule 26(f)* Report, filed June 3, 2019 (Docket No. 41), Plaintiffs state only that they will move for class certification "at an appropriate time."

[6] The Court's Standing Order, filed April 29, 2019 (Docket No. 24), specifically states in paragraph 4(b) that "[c]ounsel shall begin to actively conduct discovery before the *Fed.R.Civ.P. 23(f)* conference because at the Scheduling Conference the Court will impose tight deadlines to complete discovery."

[7] The CMO specifically states that "[m]otions for class certification shall be filed in accordance with *Local Rule 23-3*. Docket No. 43, p. 34.

*Fed. R. Civ. Pro. 23(c)(1)(A)* (stating that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action"). Plaintiffs offer no credible reason for their failure to seek class certification before the expiration of the deadline or explain why they did not seek an extension of time to do so. Instead, it appears Plaintiffs made a tactical decision to simply ignore and violate the Local Rules and the Court's Orders, and argue that they are not required to comply with *Local Rule 23-3*.

Accordingly, the Court strikes the class allegations from Plaintiffs' First Amended Complaint for Plaintiffs' failure to comply with *Local Rule 23-3*.

**B. Standing and Ripeness**

**1. The Legal Standard for Standing**.

To establish standing, Plaintiffs must demonstrate: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008)*; *Los Angeles Haven Hospice, Inc. v. Sebelius, 638 F.3d 644, 654-55 (9th Cir. 2011)* ("To invoke the jurisdiction of the federal [*17] courts, a plaintiff must demonstrate that it has Article III standing - *i.e.*, that it has suffered an injury-in-fact that is both 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical'; that the injury is 'fairly . . . traceable to the challenged action of the defendant'; and that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision' on the plaintiff's claims for relief); *see also Davis v. Fed. Election Comm'n, 554 U.S. 724, 733, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008)* ("To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling").

Article III standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*. Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp., 962 F.2d 108, 116 n. 7 (1st Cir.1992)*.

The inquiry into Article III standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth, 422 U.S. at 498 (1975)*. "In its constitutional dimension, standing imports justiciability: whether the [*18] plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III." *Id.*

Beyond the "irreducible constitutional minimum of standing" (*Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))*, the Supreme Court recognizes other prudential limitations on the class of persons who may invoke the courts' decisional remedial powers, including the requirement that a party must assert its own legal interest as the real party in interest.[8] *Warth, 422 U.S. at 499*. To obtain relief in federal court, a party must meet both the constitutional and prudential requirements for standing. *Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir.2007)*; *see also In the Matter of Village Rathskeller, Inc., 147 B.R. 665, 668 (S.D.N.Y. 1992)* (holding that "[t]he concept of standing subsumes a blend of constitutional requirements and prudential considerations").

**2. The Legal Standard for Ripeness**

"In order for a case to be justiciable under Article III of the Constitution, it must be ripe for review." *Aydin Corp. v. Union of India, 940 F.2d 527, 528 (9th Cir. 1991)*. "Standing and ripeness are closely related." *Colwell v. Department of Health and Human Services, 558 F.3d 1112, 1123 (9th Cir. 2009)* ("The burden of establishing ripeness and standing rests on the party asserting the claim"). "[W]hereas standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur." *Id.* (quotations and citations omitted). "[R]ipeness is peculiarly a question of timing, designed to prevent the courts, [*19] through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (2000)* (quotations and citations omitted). "For a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions." *Colwell, 558 F.3d at 1123*. Thus,"[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)* (quoting *Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985))*. "That is so because, if

---

[8] These prudential limitations are self-imposed rules of judicial restraint, and principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her

the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing. In this way, ripeness and standing are intertwined." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).

"[T]he ripeness inquiry contains both a constitutional and prudential component." *Thomas, 220 F.3d at 1138* (quotations and citations omitted). "[T]he constitutional component of the ripeness inquiry . . ., in many cases, . . . coincides squarely with standing's injury in fact prong." *Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006)* (quotations and citations omitted). Prudential ripeness requires the evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)*.

### 3. Plaintiffs Do Not Have [*20] Standing and Their Claims Are Not Ripe.

#### a. Plaintiffs Lack Standing

In this case, Plaintiffs allege two injuries: (1) that they have been unable to consider whether and when to pursue unspecified private sector employment; and (2) that they "will be required" to make more than the necessary 120 payments to obtain PSLF Program loan forgiveness. However, both injuries are hypothetical and, thus, neither injury is sufficient to confer standing.

A plaintiff's purported subjective inability to consider alternative courses of action that may or may not exist does not constitute an injury-in-fact. For example, in *Gerbery v. Wells Fargo Bank, N.A.*, the plaintiffs contended that they were deprived of "opportunities to obtain an alternative loan with more favorable terms." *2013 U.S. Dist. LEXIS 107744, 2013 WL 3946065 (S.D. Cal. July 31, 2013)*. The court held that the plaintiffs did not have standing because they had failed to offer "details of other loans available to them, whether they sought quotes from other lenders, or whether other lenders had offered more favorable loan terms to borrowers with credit ratings similar to [the p]laintiffs." *Id.* Similarly, in *Burton v. Time Warner Cable Inc.*, the court dismissed the action for lack of standing based on the plaintiff's [*21] purported inability to make "informed decisions" with respect to privacy, because the plaintiff did not detail or identify a specific decision that could be tied to the defendant's conduct. *2013 U.S. Dist. LEXIS 94310, 2013 WL 3337784 (C.D. Cal. Mar. 20, 2013)*.

In addition, although the "possibility of future injury" can confer standing, such a threat must be "credible" and "both real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp., 628 F.3d 1139, 1142 (9th Cir. 2010)* (citations omitted); *see also Low v. Linkedin Corp., 2011 U.S. Dist. LEXIS 130840, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)* (rejecting as "too theoretical" the plaintiff's fear that "sensitive information may be [in the future] transmitted via his browser history"). Moreover, when an injury is years away from materializing, the injury is not "immediate." *See, e.g., Contra Costa Cty. Deputy Sheriffs Ass'n v. Mitchoff, 2015 U.S. Dist. LEXIS 37148, 2015 WL 1322577 (N.D. Cal. Mar. 24, 2015)* (dismissing claim on standing grounds where it would be over one year before the Court would know if there would be any actual harm).

In this case, Plaintiffs allege they have "been unable to make rational and informed decisions as to whether and when to consider private sector (*i.e.*, non-PSLF eligible) employment." FAC, ¶¶ 163, 169, 177, 185, 194, 199, and 204. However, Plaintiffs also allege that because of their loan interest accruals to date, they do "not realistically have the freedom to look beyond employment at PSLF-eligible covered employers until [*22] their loan is forgiven." FAC, ¶¶ 116 and 135. Plaintiffs do not allege that they were offered and rejected private employment because of PHEAA's conduct nor do they allege that they have even initiated any type of private employment job search. Thus, Plaintiffs' inability to make "rational and informed decisions" does not constitute an "actual and imminent" harm. Instead, Plaintiffs seek only the certainty of knowing that on some date five years in the future they may begin looking for non-public services employment, which is not the type of harm sufficient to confer standing. Therefore, the alleged harm is not an injury-in-fact and, thus, not sufficient to confer standing.

Moreover, Plaintiffs also allege that they will be harmed because they may be required to make more than the necessary 120 payments, thereby overpaying their loans, to obtain PSLF loan forgiveness. FAC, ¶¶ 124, 134, 163 ("In particular, Plaintiffs and the Class will be required to make more student loan payments than they otherwise would have to make because they have not been credited with the full amount of qualifying payments that they have made"), 169, 177, 185, 194, and 204). However, that injury is purely hypothetical. [*23] Plaintiffs may or may not make all their loan payments on time over the next five to seven years; they may or may not continue to work for a qualifying employer for the required time; and PHEAA may correct any allegedly incorrect qualifying payment tally. Thus, Plaintiffs' unfounded fear that they may need to make more than 120 qualifying payments to obtain PSLF loan forgiveness in five to seven years is wholly speculative and far too remote to

confer standing.

#### b. Plaintiff's Claims Are Not Ripe.

A claim is not ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)* (citation and quotation marks omitted). Courts consider two factors in the ripeness analysis: (1) whether delayed review of the issue would cause hardship to the parties and (2) whether the issues are fit for judicial decision or would benefit from further factual development. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983)*.

In this case, Plaintiffs' concerns that they may pay more than the required 120 qualifying payments and their inability to consider searching for other positions five to seven years in the future are entirely speculative because they depend on at least two important **[*24]** contingencies: (1) Plaintiffs successfully completing the necessary 120 qualifying payments for loan forgiveness (and satisfying all other PSLF program requirements); and (2) the absence of any adjustments that would correct Plaintiffs' qualifying payment tally. Because those contingencies will not be removed for several years and because it is impossible to know if Plaintiffs will be harmed when those contingencies are removed, the Court concludes that Plaintiffs' claims are not ripe.[9]

### C. Preemption

#### 1. The Legal Standard for Preemption

The *Supremacy Clause of the Constitution* provides that federal law "shall be the supreme Law of the Land." *U.S. Const. art. VI, cl. 2*. "Consistent with that command," the United States Supreme Court has recognized that "state laws that conflict with federal law are 'without effect.'" *Altria Group, Inc. v. Good, 555 U.S. 70, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008)* (quoting *Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981))*. Thus,"[f]ederal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."[10] *Tocher v. City of Santa Ana, 219 F.3d 1040, 1045 (9th Cir.2000)*, abrogated on other grounds by *City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 431-34, 122 S. Ct. 2226, 153 L. Ed. 2d 430 (2002)*.

With respect to express preemption, the Supreme Court has **[*25]** held that Congress may indicate its intent to displace state law through express language. *Altria Group, 555 U.S. at 76*. Where Congress enacts an express preemption provision, a court must interpret the provision and "identify the domain expressly pre-empted by that language." *Medtronic, Inc. v. Lohr, 518 U.S. 470, 484, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)* (internal quotation marks omitted). A court should consider the text of the provision, the surrounding statutory framework, and Congress's stated purposes in enacting the statute to determine the proper scope of an express preemption provision. *Id. at 485-86*; *Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)*.

With respect to conflict preemption, the Supreme Court has held that a state law, whether arising from statute or common law, is preempted if it creates an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council, 530 U.S. 363, 373, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000)* (quoting *Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941))*. A court should discern

---

[9] Winebarger appears to concede in the First Amended Complaint that her payment count has been corrected, although she seems to disingenuously retreat from that concession in her Oppositions. *See* FAC, ¶ 114. To the extent that Winebarger's payment count has been corrected, her claims would be moot. *Chen v. Allstate Ins. Co., 819 F.3d 1136, 1144 (9th Cir. 2016)* ("[A] lawsuit — or an individual claim — becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through future litigation"); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)* (holding that *Article III, § 2 of the Constitution* limits the jurisdiction of federal courts to resolving "the legal rights of litigants in actual controversies").

[10] In this case, Defendants argue that Plaintiffs' state law claims are preempted by the Higher Education Act ("HEA") of 1965, *20 U.S.C. §§ 1001-1155*. It is undisputed that the Ninth Circuit has previously held that field preemption does not apply to the HEA. *See Keams v. Tempe Technical Inst., Inc., 39 F.3d 222, 225-226 (9th Cir. 1994)* ("It is apparent . . . that Congress expected state law to operate in much of the field in which it was legislating"); *see also Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc., 168 F.3d 1362, 1369, 335 U.S. App. D.C. 62 (D.C. Cir.1999)* (affirming prior holding that "federal education policy regarding [private lending to students] is not so extensive as to occupy the field"). Therefore, the Court will only consider if Plaintiffs' state law claims are preempted under express and conflict preemption.

congressional objectives by "examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* With respect to an area in which states have traditionally acted, the Supreme Court has held that a state's historic police powers will not be superseded absent a "clear and manifest purpose of Congress." *Wyeth v. Levine, 555 U.S. 555, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009)*.

**2. Plaintiffs' State Law Claims Are Preempted**.

Express preemption applies when Congress [*26] has stated in the statutory language that its enactments preempt state law. *English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990)*. In the HEA, Congress included several express preemption provisions applicable to FFELP Loans and Direct Loans. *See, e.g.*, *20 U.S.C. §§ 1078(d)*, *1091a(a)(2)(B)*, *1091a(b)(1)-(3)*, and *1098g*. *20 U.S.C. § 1098g* is relevant to this case and it provides that FFELP and Direct Loans "shall not be subject to any disclosure requirements of any State law." In *Chae v. SLM Corporation, 593 F.3d 936 (9th Cir, 2010)*, the Ninth Circuit held that *Section 1098g* expressly preempts claims under California's UCL and *Consumer Legal Remedies Act*.

In this case, all six of Plaintiffs' state law claims are grounded in the allegedly inaccurate disclosures that PHEAA made to Plaintiffs and NelNet made to Winebarger. *See, e.g.*, FAC ¶¶ 161 (describing PHEAA's alleged "fail[ure] to communicate significant information to borrowers"), 167, 174, 181 (alleging PHEAA's alleged failure to "provide sound information"), 182, and 197. Therefore, each of Plaintiffs' state claims rests on an alleged misrepresentation — that PHEAA or NelNet provided an inaccurate qualifying payment count for PSLF eligibility — and, thus, the Court concludes that these claims are preempted because the failure to provide accurate information is, in essence, nothing more than a disclosure claim. *Chae, 593 F.3d at 942-43*.

In addition, [*27] to the extent that any of Plaintiffs' state law claims are not expressly preempted, the Court concludes that Plaintiffs' state law claims are preempted as a result of conflict preemption. Conflict preemption is implicit preemption of state law that occurs when either (1) "compliance with both federal and state regulations is a physical impossibility" or (2) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McClellan v. I-Flow Corp., 776 F.3d 1035, 1039 (9th Cir. 2015)* (citation omitted). In enacting the HEA, Congress provided "a clear command for uniformity." *Chae, 593 F.3d at 945*. In *Chae*, the Ninth Circuit recognized that the HEA preempted claims under California law related to a loan servicer's allegedly fraudulent misrepresentations in its billing statements and held that "one need not have an advanced degree in risk management and financial practices to believe . . . that exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally guaranteed student loans." *Id. at 945* (citation and quotation marks omitted). Thus, in *Chae*, the Ninth Circuit held that claims for breach of contract, breach of the implied covenant of good faith and fair dealing, [*28] and unjust enrichment were preempted by conflict preemption. *Id.*

The same uniformity concerns that resulted in the Ninth Circuit applying conflict preemption to the Federal Family Education Loan Program ("FFELP") in *Chae* are also present in the Direct Loan Program. *Id.*; *see also* *83 Fed. Reg. at 10621* ("[T]he purpose of the Direct Loan Program [was] to establish a uniform, streamlined, and simplified lending program managed at the Federal level"). Thus, the HEA embodies an "unmistakable command" from Congress "to implement the student-loan statutes" with "a set of rules that will apply across the board." *Chae, 593 F.3d at 945*; *see also* *83 Fed. Reg. at 10621* ("These conflicts with statutes, regulations, Federal contracts, and congressional objectives suggest that State regulation of loan servicers would be preempted by Federal law.").

In this case, Plaintiffs' state law claims would undermine Congress's unequivocal objective of uniformity. In enacting the HEA, Congress certainly did not call on the courts to determine whether loan servicers' representations and conduct were adequate by applying the law of 50 different states. Instead, Congress's clear objective was the resolution of questions about the adequacy of loan servicers by applying federal [*29] law as embodied in DOE's regulations and contracts between DOE and loan servicers. As in *Chae*, Plaintiffs claimed that PHEAA and NelNet made misrepresentations in their billing statements and, thus, as in *Chae*, the HEA preempts all of Plaintiffs' state law claims.

Accordingly, the Court concludes that all of Plaintiffs' state law claims are preempted.

**D. Plaintiffs Fail to State a Claim**.

**1. Plaintiffs Fail to State an ECOA Claim**.

In the fifth claim for relief, Plaintiffs allege a claim for violation of the ECOA against PHEAA. To state a claim for violation of the ECOA, a plaintiff must allege that: (1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from the defendant; and (3) the plaintiff was

denied credit on the basis that the plaintiff was a member of the protected class." *Egbukichi v. Wells Fargo Bank, NA, 184 F. Supp. 3d 971, 981 (D. Or. 2016)*. An individual whose "income derives from any public assistance program" is part of a protected class. *15 U.S.C. § 1691(a)*.

In this case, Plaintiffs have not alleged facts sufficient to satisfy any element of an ECOA claim. Plaintiffs do not allege, nor could they, that they derive income from a public assistance program, and, thus, they are not part of a protected class. In addition, Plaintiffs **[*30]** do not allege that PHEAA acted in a way that potentially affects their ability to obtain credit on favorable terms and, thus, PHEAA does not qualify as a creditor. *See, e.g., Duarte v. Quality Loan Serv. Corp., 2018 U.S. Dist. LEXIS 77642, 2018 WL 2121800 (C.D. Cal. May 8, 2018)*. Finally, Plaintiffs admit that PHEAA's actions were motivated by a financial incentive — not based on their alleged "protected status."

Accordingly, the Court concludes that Plaintiffs have failed to state a claim for violation of ECOA and, because amendment is futile, Plaintiffs' fifth claim for relief is dismissed without leave to amend.[11]

**2. Plaintiffs Fail to State Claims for Negligence or Breach of Fiduciary Duty**.

In the first claim for relief, Plaintiffs allege a claim of negligence against PHEAA and Winebarger alleges a separate claim of negligence against NelNet. In the second claim for relief, Plaintiffs allege a claim for breach of fiduciary duty against PHEAA and Winebarger alleges a separate claim for breach of fiduciary duty against NelNet.

The elements of a negligence claim are: (1) a duty of care; (2) a breach of that duty; (3) causation; and (4) damages.[12] *Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917, 50 Cal. Rptr. 2d 309, 911 P.2d 496 (1996)*; *see also Armstrong v. Navient Sols., LLC, 292 F. Supp. 3d 464, 474 (D.D.C. 2018)* (stating standard under District of Columbia law). Similarly, the elements for a breach of fiduciary duty claim are: (1) **[*31]** the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086, 41 Cal. Rptr. 2d 768 (1995)*; *see also Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 30 (D.D.C. 2014)* (stating standard under District of Columbia law).

"[T]he existence of a duty is a question of law for the court." *See Ky. Fried Chicken of Cal. v. Super. Ct., 14 Cal. 4th 814, 819, 59 Cal. Rptr. 2d 756, 927 P.2d 1260 (Cal. 1997)*. Under both California and District of Columbia law, loan servicers do not owe general duties of care to borrowers. *See Ruiz v. Cent. Mortg. Co., 2015 WL 12683873, at *11 (C.D. Cal. Apr. 2, 2015)*. ("[t]he principle that a financial institution owes no duty to a borrower has been extended to loan servicers") (internal citations and quotations omitted); *Armstrong, 292 F. Supp. 3d at 474* ("Plaintiffs have failed to identify any authority recognizing a lender or servicer's non-contractual duty 'to disclose all material facts' and 'correctly [to] report . . . account balance[s]' outside a contractual relationship, and the Court can discern no basis for imposing such a duty"). Similarly, under both California and District of Columbia law, loan servicers do not owe a fiduciary duty to borrowers. *See Moreno v. Citibank, N.A., 2010 U.S. Dist. LEXIS 25955, 2010 WL 1038222, at* 3 (N.D. Cal. Mar. 10, 2010)* ("Courts have . . . concluded that loan servicers do not owe a fiduciary duty to borrowers"); *Edwards, 24 F. Supp. 3d at 30* (holding that loan servicers owe no fiduciary duty to borrowers under District of Columbia law).

Accordingly, the Court concludes that Plaintiffs have failed **[*32]** to state a claim for negligence or the breach of fiduciary duty and, because amendment is futile, Plaintiffs' first and second claims for relief are dismissed without leave to amend. *See, e.g., Hyland v. Navient Corp. & Navient Solutions, LLC, 2019 U.S. Dist. LEXIS 113038, 2019 WL 2918238, at *10-11 (S.D.N.Y. July 8, 2019)* (holding that the plaintiffs failed to state a claim for negligence, negligent misrepresentation, or breach of fiduciary duty under California, New York, or Maryland law because the plaintiffs could not allege the "threshold requirement . . . that Navient

---

[11] Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987)* ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). "Leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 742 (9th Cir. 2008)* (quotations and citations omitted). In this case, Plaintiffs have had one opportunity to amend their Complaint and have failed to offer any additional facts they might be able to plead if leave was granted. *See* **Deutsch v. Turner Corp., 324 F.3d 692, 717-718 (9th Cir. 2003)** (upholding denial of leave to amend on the basis of futility where the plaintiffs proffered facts to the district court that were insufficient to support tolling and failed to offer additional facts on appeal).

[12] Plaintiffs' claims for negligence, breach of fiduciary duty, and breach of implied-in-fact contract will be analyzed under the law of both California and District of Columbia.

owed plaintiffs a duty").

### 3. Plaintiffs Fail to State a Claim for Breach of Contract.

In the third claim for relief, Plaintiffs allege a claim of breach of contract against PHEAA and Winebarger alleges a separate claim of breach of contract against NelNet. The Court agrees with Plaintiffs that third parties may sue under government contracts if they can show that there is a "clear intent" for them to benefit under the contract.[13] *Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999)* (noting that although "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries," this rule is far from absolute; parties may overcome it by showing "a clear intent to the contrary"). However, in this case, Plaintiffs have not, and cannot, allege any facts or point to any [*33] language in the Servicing Contracts between DOE and Defendants that even arguably would allow a borrower to sue to enforce the Servicing Contracts. *See, e.g, Hyland, 2019 U.S. Dist. LEXIS 113038, 2019 WL 2918238, at *8-10* (dismissing a breach of contract claim with similar allegations). Thus, Plaintiffs have failed to allege facts showing a "clear intent" necessary to rebut the presumption that they are mere incidental beneficiaries under the Servicing Contracts.

Accordingly, the Court concludes that Plaintiffs have failed to state a claim for breach of contract and, because amendment is futile, Plaintiffs' third claim for relief is dismissed without leave to amend.

### 4. Plaintiffs Fail to State a Claim for Breach of Implied-in-Fact Contract.

In the fourth claim for relief, Plaintiffs allege a claim of breach of implied-in-fact contract against PHEAA and Winebarger alleges a separate claim of breach of implied-in-fact contract against NelNet. A claim for a breach of an implied-in-fact contract "requires parties capable of consent, the consent of those parties, a lawful object, and sufficient consideration." *See ASP Props. Grp. v. Fard, Inc., 133 Cal. App. 4th 1257, 35 Cal. Rptr. 3d 343 (2005)*; *see also Paul v. Howard Univ., 754 A.2d 297, 311 (D.C. 2000)* ("all the necessary elements of an express contract — including offer, acceptance, and consideration — must be shown in order to [*34] establish the existence of an implied-in-fact contract"). Consideration "'must actually be bargained for as the exchange for the promise.' 'Put another way, the benefit or prejudice must have induced the promisor's promise.'" *Steiner v. Thexton, 48 Cal. 4th 411, 106 Cal. Rptr. 3d 252, 226 P.3d 359 (2010)* (quoting *Bard v. Kent, 19 Cal. 2d 449, 122 P.2d 8 (1942))*; *see also Clay v. Chesapeake & Potomac Tel. Co., 184 F.2d 995, 996, 87 U.S. App. D.C. 284 (D.C. Cir. 1950)* ("The essence of consideration . . . is that it is a bargained-for equivalent").

In this case, Plaintiffs have failed to allege the existence any bargained-for consideration between PHEAA and Plaintiffs. In addition, even if Plaintiffs could allege facts that could be construed as bargained-for consideration, PHEAA's obligation to provide "sound information" is simply too vague to be enforceable. *See Ladas v. Cal. State Auto. Ass'n, 19 Cal. App. 4th 761, 23 Cal. Rptr. 2d 810 (1993)*; *Obelisk Corp. v. Riggs Nat'l Bank, 668 A.2d 847, 855 (D.C. 1995)*. Similarly, Winebarger has failed to allege the existence of any bargained-for consideration with NelNet. In addition, courts have rejected the theory that a contract is formed between a borrower and a loan servicer simply by the loan servicer servicing a borrower's loans. *See, e.g., Edwards, 24 F. Supp. 3d 21, 28 (D.D.C. 2014)*.

Accordingly, the Court concludes that Plaintiffs have failed to state a claim for breach of implied-in-fact contract and, because amendment is futile, Plaintiffs' fourth claim for relief is dismissed without leave to amend.

### 5. Winebarger Fail to State a Claim for [*35] California Unfair Competition Law.

In the sixth claim for relief, Winebarger alleges a claim violation of the UCL against PHEAA and NelNet. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." *Cal. Bus. & Prof. Code § 17200*. "To assert a UCL claim, a private plaintiff [must] have 'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" *Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010)* (quoting *Cal. Bus. & Prof. Code § 17204*). In this case, Winebarger lacks standing to bring a UCL claim because she has not, and cannot, alleged that she has lost money or property. *Moody v. Ocwen Loan Servicing, LLC, 2016 U.S. Dist. LEXIS 190592, 2016 WL 8814352 (C.D. Cal. Feb. 22, 2016)*. In addition, Winebarger's "unfair" UCL claim fails because she has not "tethered any [alleged] unfair practices to a specific constitutional, statutory, or regulatory provision." *Nikoopour v. Ocwen Loan Servicing, LLC, 2018 U.S. Dist. LEXIS 29761, 2018 WL 1035210 (S.D. Cal. Feb. 23, 2018)*. Moreover, Winebarger's "unlawful" UCL claim

---

[13] Federal common law governs the interpretation of federal government contracts, such as the Servicing Contracts. *Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1160 (9th Cir. 2016)*.

fails because she has not sufficiently alleged any claims related to PHEAA's conduct. *Simila v. Am. Sterling Bank, 2010 WL 11442911 (S.D. Cal. April 27, 2010)*.

Accordingly, the Court concludes that Winebarger has failed to state a claim for violation of the UCL and, because amendment is futile, the sixth claim for relief is dismissed without leave to amend.

### 6. Overmier and Gannon Fail to State a Claim Under the District of Columbia's CCPA.

In the seventh claim for relief, Overmier and Gannon allege a claim for violation **[*36]** of the CPPA against PHEAA. Liability under the CPPA is limited to merchants, or individuals who "sell, . . . or transfer, either directly or indirectly, consumer goods or services" or who, in the ordinary course of business, "supply the goods or services which are or would be the subject matter of a trade practice." *D.C. Code § 28-3901(a)(3)*; *see* *Baylor v. Mitchell Rubenstein & Assocs., P.C., 857 F.3d 939, 948, 429 U.S. App. D.C. 221 (D.C. Cir. 2017)*. Loan servicers, such as PHEAA, are not "merchants" and, thus, are not subject to liability under the CPPA. *Mushala v. U.S. Bank, N.A., 2019 U.S. Dist. LEXIS 54039, 2019 WL 1429523 (D.D.C. Mar. 29, 2019)*.

Accordingly, the Court concludes that Overmier and Gannon have failed to state a claim for violation of the CCPA and, because amendment is futile, the seventh claim for relief is dismissed without leave to amend.

### IV. Conclusion

For all the foregoing reasons, NelNet's Motion to Dismiss and PHEAA's Motion to Dismiss are **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED without leave to amend** and this action is **DISMISSED with prejudice**.

IT IS SO ORDERED.

---

End of Document