# fUNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, <br><br>                 Plaintiff, <br><br>      v. <br><br> PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, d/b/a FEDLOAN SERVICING and AMERICAN EDUCATION SERVICES, <br><br>                 Defendant. | Case No. 19-cv-9155 |

**AMENDED ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Pennsylvania Higher Education Assistance Agency (PHEAA), by and through its undersigned counsel, hereby responds to the Complaint filed by the People of the State of New York, by and through their Attorney General Letitia James (NYAG), with Affirmative Defenses, as follows:

## INTRODUCTION

1.     Admitted in part and denied in part.   Admitted that NYAG brings this civil enforcement action against PHEAA, and that the Complaint purports to assert claims pursuant to the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5301, *et seq.*, N.Y. Executive Law § 63(12), and N.Y. General Business Law (GBL) § 349.   To the extent that the averments in Paragraph 1 consist of legal conclusions, no response is required.   To whatever extent there are any remaining averments, denied.

2.     The averments contained in Paragraph 2 purport to describe entitlements under federal statutes and regulations.   Those documents speak for themselves, and PHEAA respectfully refers the Court to the applicable statutes and regulations for the contents thereof.   Further, to the extent that the averments in Paragraph 2 consist of legal conclusions, no response is required.

3.     The averments of Paragraph 3 purport to summarize and/or quote the Congressional Record, which speaks for itself.   PHEAA respectfully refers the Court to the document for the contents thereof.

4.     The averments of Paragraph 4 purport to summarize and/or quote the Congressional Record, which speaks for itself.   PHEAA respectfully refers the Court to the document for the contents thereof.

5.     Denied. PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 5, and therefore denies them.

6.     Denied.  By way of further response, the Complaint does not identify a single instance in which PHEAA has created "financial hardship" for a New York borrower.

7.     Admitted.   By way of further response, PHEAA is a statutorily created instrumentality of the Commonwealth of Pennsylvania with headquarters located at 1200 North 7th Street, Harrisburg, Pennsylvania 17102.  PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body corporate and politic constituting a public corporation and government instrumentality."  24 Pa. Stat. § 5101.

8.     Admitted in part and denied in part.  Admitted that PHEAA has a contract with the United States Department of Education (Department) to service student loans held by the Department under the William D. Ford Direct Loan Program (Direct Loans).  To the extent that the averments in Paragraph 8 purport to characterize the terms of PHEAA's contract with the Department, that document speaks for itself, and PHEAA respectfully refers the Court to that document for the contents thereof.  To whatever extent there are any remaining averments, denied.

9.     To the extent that the averments in Paragraph 9 purport to characterize the terms of PHEAA's contract with the Department, that document speaks for itself, and PHEAA respectfully refers the Court to that document for the contents thereof.  Further, to the extent that the averments in Paragraph 9 consist of legal conclusions, no response is required.  The remaining averments of Paragraph 9 are denied.

10.    Denied.

11.    Denied.

12.    Denied.  PHEAA specifically denies that it has caused either "insult" or "injury" to New York borrowers.  By way of further response, PHEAA's Public Service Loan Forgiveness

(PSLF) payment review protocols are authorized and approved by the Department. To the extent that NYAG seeks to impose obligations on PHEAA beyond, or at odds with, those established by the Department, NYAG's claims are improper and preempted.

13.     Denied.

14.     Admitted in part and denied in part. Admitted that a high percentage of PSLF applications have been rejected as ineligible, or not yet eligible, for forgiveness. The remaining averments of Paragraph 14 are denied. By way of further response, as of March 2020, 96% of PSLF applications have been denied due to the borrowers (1) not meeting one of the two main program requirements (working for a qualifying employer for 10 years and making 120 qualifying payments) and (2) submitting incomplete applications. See Federal Student Aid (FSA), PSLF Report, *available at* https://studentaid.gov/data-center/student/loan-forgiveness/pslf-data (last viewed May 14, 2020). By way of further response, all denials have been consistent with, and at the direction of, the Department. Moreover, borrowers who have been determined to not yet be eligible for PSLF forgiveness can seek loan forgiveness if and when they satisfy the Program's requirements.

15.     To the extent that the averments of Paragraph 15 purport to summarize and/or quote a document, that document speaks for itself. The remaining averments of Paragraph 15 are denied.

16.     Denied.

17.     Denied.

18.     Denied. PHEAA specifically denies that it has engaged in deceptive, unfair, or abusive practices.

19.   Denied.   By way of further response, PHEAA devotes significant resources, including resources for which it is not reimbursed by the Department, to ensure that its loan servicing is timely and complies with the guidelines established by the Department.

20.   Admitted in part and denied in part.  Admitted that in most cases, "[s]tudent loan borrowers have no choice of servicer."  The remaining averments in Paragraph 20 are denied.

21.   Denied.   Specifically denied that "PHEAA's cavalier approach to its responsibilities has meant it has deprived borrowers of benefits which they have earned and which Congress intended them to have."  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 21, and therefore denies them.

## PARTIES, JURISDICTION, AND VENUE

22.   Admitted.

23.   The averments in Paragraph 23 consist of legal conclusions to which no response is required.

24.   The averments in Paragraph 24 consist of legal conclusions to which no response is required.

25.   Admitted in part and denied in part.  Admitted that PHEAA is a national student loan servicer with headquarters located at 1200 North 7th Street, Harrisburg, Pennsylvania 17102. By way of further response, PHEAA is a statutorily created instrumentality of the Commonwealth of Pennsylvania.  PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body corporate and politic constituting a public corporation and government instrumentality."  24 Pa. Stat. § 5101.

26.     The averments in Paragraph 26 consist of legal conclusions to which no response is required.

27.     The averments in Paragraph 27 consist of legal conclusions to which no response is required.

28.     The averments in Paragraph 28 consist of legal conclusions to which no response is required.

29.     The averments in Paragraph 29 consist of legal conclusions to which no response is required.

30.     The averments in Paragraph 30 consist of legal conclusions to which no response is required.

31.     The averments in Paragraph 31 consist of legal conclusions to which no response is required.

## FACTUAL ALLEGATIONS

I.     **PHEAA**

32.     Admitted.

33.     Admitted.

34.     Admitted in part and denied in part.   Admitted that PHEAA services student loans nationally pursuant to a contract with the Department.  PHEAA denies the remaining averments in Paragraph 34.

35.     Admitted in part and denied in part. Admitted that as of June 30, 2019, PHEAA serviced approximately $454 billion in student loans.  PHEAA lacks knowledge or information

sufficient to form a belief as to the remaining averments in Paragraph 35, and therefore denies them.

36.     Denied. To the extent that the averments in Paragraph 36 purport to summarize court opinions and/or Pennsylvania statutes, those opinions and statutes speak for themselves, and PHEAA respectfully refers the Court to those documents for the contents thereof.  To the extent that the averments in Paragraph 36 consist of legal conclusions, no response is required.  To whatever extent there are any remaining averments, denied.

37.     Admitted.

38.     Admitted.

39.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 39 because the phrase "reaps substantial rewards" is unreasonably vague and ambiguous.  PHEAA therefore denies them.

40.     Denied as stated.  While it is admitted that PHEAA received "a little over $201 million" for its servicing of federal student loans, it is denied that amount was "around a third" of its total operating revenue.

41.     Denied.  By way of further response, the Department has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its legal obligations or breaches its contract with the Department, such that PHEAA is not "effectively guaranteed a steady flow of borrower through the program for as long as its contract lasts."

42.     Denied. By way of further response, the Department may withhold payment in the event that PHEAA fails to comply with its statutory, regulatory, or contract obligations.

43.     Admitted in part and denied in part.   Admitted that the Consumer Financial Protection Bureau (CFPB) has reported receiving borrower complaints about PHEAA.  It is denied, however, that the receipt of a complaint is or should be considered to imply that the complaints were substantiated, or were the result of any wrongdoing.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 43 and therefore denies them.

44.     To the extent that the averments of Paragraph 44 purport to summarize and/or characterize the results of quarterly surveys by the Department, those documents speak for themselves, and PHEAA respectfully refers the Court to those documents for the contents thereof. The remaining averments of Paragraph 44 are denied.

45.     The averments of Paragraph 45 purport to summarize and/or characterize quarterly surveys by the Department.  Those documents speak for themselves, and PHEAA respectfully refers the Court to those documents for the contents thereof.  To the extent there are any remaining averments of Paragraph 45, denied.

46.     The averments of Paragraph 46 purport to summarize and/or characterize semi-annual surveys by the Department.   Those documents speak for themselves, and PHEAA respectfully refers the Court to those documents for the contents thereof.  To the extent there are any remaining averments of Paragraph 46, denied.

**II.     Federal Student Loan Programs**

47.     Admitted.

48.     Admitted.

49.     Denied as stated.  According to the Department's Federal Student Aid Office, as of the first quarter of 2019, the federal student loan portfolio consisted of $1.445 trillion in loans.  As of the first quarter of 2020, the federal student loan portfolio consisted of $1.515 trillion in loans.

50.     Admitted in part and denied in part.  It is admitted that under the Federal Family Education Loan (FFEL) and Direct Loan programs, the holder of the loan typically does not service the loans, and the loan servicer documents loan activity, issues bills in formats approved by the loan holder, collects monthly payments, and assists borrowers.  To whatever extent the averments of Paragraph 50 allege that loan servicers exercise discretion over the manner in which they interact with borrowers, those averments are denied.

51.     Admitted.

52.     Admitted in part and denied in part.  Admitted that beginning in 2009, the Department introduced new repayment options for federally issued and guaranteed loans.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 52 and therefore denies them.

53.     The averments of Paragraph 53 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof.

54.     The averments of Paragraph 54 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof.

55.     The averments of Paragraph 55 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant

regulations for the content thereof.  It is denied, however, that the application to the borrower's servicer entitles the borrower "[t]o participate in one of these repayment plans."  Instead, borrowers must meet the specific program requirements in order to participate.

56.    The averments of Paragraph 56 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof.

57.    The averments of Paragraph 57 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof.

58.    The averments of Paragraph 58 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof.

59.    Denied.  PHEAA lacks sufficient knowledge or information to form a belief as to the averments in Paragraph 59 and therefore denies them.

60.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 60 and therefore denies them.

61.    The averments contained in Paragraph 61 purport to summarize a Brookings Institute report, which is a document that speaks for itself.  PHEAA respectfully refers the Court to the report for the content thereof.  PHEAA denies the remaining averments in Paragraph 61.

III.    **The Public Service Loan Forgiveness Program**

62.    Admitted.

63.     The averments contained in Paragraph 63 purport to summarize the contents of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof.  To the extent that the averments in Paragraph 63 consist of legal conclusions, no response is required.

64.     Admitted.

65.     Admitted in part and denied in part.  Admitted that PHEAA communicates with borrowers about PSLF eligibility requirements by providing borrowers with Department-approved information.  PHEAA denies the remaining averments of Paragraph 65.

66.     The averments contained in Paragraph 66 purport to summarize the contents of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof. To the extent that the averments in Paragraph 66 consist of legal conclusions, no response is required.

67.     The averments contained in Paragraph 67 purport to summarize the contents of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof. To the extent that the averments in Paragraph 67 consist of legal conclusions, no response is required.

68.     The averments contained in Paragraph 68 purport to summarize the contents of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the relevant regulations for the content thereof. To the extent that the averments in Paragraph 68 consist of legal conclusions, no response is required.

69.     Admitted.

70.     Admitted in part and denied in part. PHEAA denies that it informs the borrower how many qualifying payments towards the required 120 payments the borrower has made "to date."  By way of further response, PHEAA informs the borrower how many qualifying payments the borrower has made during periods for which the borrower has submitted an approved Employment Certification Form (ECF).   The remaining averments in Paragraph 70 are admitted.

71.     Admitted in part and denied in part. PHEAA denies that it informs the borrower how many qualifying payments the borrower has made "to date."  By way of further response, PHEAA informs the borrower how many qualifying payments the borrower has made during periods for which the borrower has submitted an approved ECF.  The remaining averments in Paragraph 71 are admitted.

72.     Admitted in part and denied in part.  Admitted that after a borrower believes they have made 120 PSLF-qualifying payments, the borrower must complete and submit to PHEAA a PSLF Application for Forgiveness to have the balance of the borrower's loans forgiven.  At that time, PHEAA, following guidance from the Department, makes a determination whether (not a "determination that") the borrower has made the requisite number of PSLF-qualifying payments based on the contents of the borrower's Application for Forgiveness and any previous ECFs submitted by the borrower.  For borrowers who appear to have made the requisite number of PSLF-qualifying payments, PHEAA forwards the application to the Department for final review and approval.  The remaining averments of Paragraph 72 are denied.

73.     Admitted.

74.     Admitted.  By way of further response, as of March 2020, there have been over 2.8 million ECFs approved and nearly 1.3 million ECFs submitted that were not approved.  The average loan balance of the borrowers whose ECFs were approved is approximately $88,000.

75.     Admitted in part and denied in part.  PHEAA admits that as of June 2019, more than 90,000 borrowers (nationally) had applied for forgiveness, and that less than a thousand borrowers had received discharges.  PHEAA specifically denies that PHEAA has engaged in deceptive, unfair, and abusive conduct.  The two primary reasons for the denial of PSLF forgiveness applications are: (1) a failure to meet the program's requirements and (2) incomplete applications.  Indeed, as of March 2020, over 188,000 PSLF applications had been submitted, but over 171,000 of those applications were deemed ineligible under Department regulations and policies.  Over 3,000 borrowers had their applications approved, with the balance of applications being processed.  The remaining averments of Paragraph 75 are denied.

## IV. PHEAA's Deceptive, Unfair, and Abusive Practices

### A.     FedLoan fails to accurately count borrowers' PSLF-qualifying payments

#### i.     *FedLoan is responsible for determining borrowers' progress towards forgiveness and borrowers reasonably rely on its ability to do so, but FedLoan lacks incentives to carry out this obligation accurately*

76.     The averments in Paragraph 76 consist of legal conclusions to which no response is required.  To the extent a response is required to Paragraph 76 or to the headers NYAG employs, denied.

77.     The averments of Paragraph 77 purport to summarize and/or quote the Department's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.

78.     The averments of Paragraph 78 purport to summarize and/or quote a document, which speaks for itself.  PHEAA respectfully refers the Court to the document for the content thereof.  To the extent there are any remaining averments of Paragraph 78, denied.

79.     The averments of Paragraph 79 purport to summarize and/or quote a document, which speaks for itself.  PHEAA respectfully refers the Court to the document for the content thereof.  To the extent there are any remaining averments of Paragraph 79, denied.

80.     The averments of Paragraph 80 purport to summarize and/or quote PHEAA's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.  To the extent there are any remaining averments of Paragraph 80, denied.

81.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the generalized averments about borrower knowledge in Paragraph 81, and therefore denies them.

82.     Denied.  PHEAA lacks sufficient knowledge or information to form a belief as to the generalized averments about borrower access in Paragraph 82, and therefore denies them.  To the extent that Paragraph 82 alleges that certain records "are now supposed to be held by" PHEAA, that allegation is a legal conclusion to which no response is required.  To whatever extent a response is required, denied.  PHEAA, through no fault of its own, and as the Department is aware, at times has not received borrower records from a prior servicer in the prescribed format or at the prescribed time.

83.     Admitted in part and denied in part.  Admitted that there are multiple repayment plans available to borrowers, and only some are PSLF-qualifying.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining generalized averments about borrower knowledge in Paragraph 83, and therefore denies them.

84.     Denied.

85.     The averments in Paragraph 85 purport to summarize, state the terms of, or characterize PHEAA's contract with the Department, which speaks for itself.  PHEAA respectfully refers the Court to the contract for the contents thereof.

86.     To the extent that the averments in Paragraph 86 purport to summarize, state the terms of, or characterize PHEAA's contract with the Department, that document speaks for itself, and PHEAA respectfully refers the Court to that document for the contents thereof.  The remaining averments of Paragraph 86 are denied.

87.     Admitted in part and denied in part.  Admitted that borrowers are encouraged to submit ECFs annually by the Department.  To the extent that the averments in Paragraph 87 purport to summarize, state the terms of, or characterize PHEAA's contract with the Department, that document speaks for itself, and PHEAA respectfully refers the Court to that document for the contents thereof.  The remaining averments of Paragraph 87 are denied.

88.     Denied.

89.     Denied.

90.     The averments of Paragraph 90 purport to summarize reports by FSA, which speak for themselves, and PHEAA respectfully refers the Court to those documents for the contents thereof.  To the extent there are any remaining averments of Paragraph 90, denied.

> ### ii.     *FedLoan makes errors in payment counts when loans are first transferred to its systems*

91.     Admitted in part and denied in part.  Admitted that PHEAA has a loan servicing system known as Compass, that PHEAA receives borrower records from other loan servicers, that some other loan servicers use loan servicing systems other than Compass, that compatibility issues between loan servicing systems are sometimes addressed during the course of records transfers,

and that the Department is aware of the compatibility issues between loan servicing systems. PHEAA denies the remaining averments of Paragraph 91, as well as the header that precedes Paragraph 91.

92.     Admitted in part and denied in part.  Admitted that PHEAA has an automated process for determining PSLF-qualifying payments, including for certain pre-conversion payments, and that in some instances it conducts a manual review of the borrower's records to determine PSLF-qualifying payments.  PHEAA denies the remaining averments of Paragraph 92.

93.     The averments of Paragraph 93 purport to summarize and/or quote a report published by the U.S. Government Accountability Office (GAO), which speaks for itself.  PHEAA respectfully refers the Court to the document for the content thereof.  To the extent there are any remaining averments of Paragraph 93, denied.

94.     Admitted in part and denied in part.  Admitted that PHEAA uses an automated process for determining PSLF-qualifying payments and that it communicates with borrowers regarding their number of their PSLF-qualifying payments.   PHEAA denies the remaining averments in Paragraph 94.

95.     Denied.

96.     The averments of Paragraph 96 purport to summarize and/or quote a document, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  To the extent there are any remaining averments of Paragraph 96, denied.

97.     Denied.  By way of further response, PHEAA calculates borrowers' qualifying payments in accordance with its regulatory and contractual obligations.

98.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 98 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, has not averred that the borrower is or was a New York resident, and in any event concedes that PHEAA remediated the alleged error.

99.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 99 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, and has not averred that the borrower is or was a New York resident.  Further, to the extent that the averments in Paragraph 99 purport to summarize and/or quote a document, that document speaks for itself. PHEAA respectfully refers the Court to that document for the contents thereof.

100.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 100 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, has not averred that the borrower is or was a New York resident, and in any event concedes that PHEAA remediated the alleged error.  Further, to the extent that the averments in Paragraph 100 purport to summarize and/or quote a document, that document speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

101.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 101 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, has not averred that the borrower is or was a New York resident, and in any event concedes that PHEAA remediated the alleged error.

102.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 102 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, and has not averred that the borrower is or was a New York resident.

103.    Denied.

104.    The averments of Paragraph 104 purport to summarize a document, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  To the extent there are any remaining averments of Paragraph 104, denied.

105.    The averments of Paragraph 105 purport to summarize and/or quote a GAO Report, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  To the extent there are any remaining averments of Paragraph 105, denied.

106.    The averments of Paragraph 106 purport to summarize and/or quote a document, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

107.    Denied.

### iii.    *FedLoan fails to maintain accurate counts for payments made after it begins servicing loans*

108.    Denied.  The averments contained in the header preceding Paragraph 108 also are denied.

109.    Admitted in part and denied in part.  Admitted that PHEAA has automated processes for tracking PSLF-qualifying payments.  PHEAA denies the remaining averments in Paragraph 109.

110.    Denied.

111.    Denied.

112.    Denied.  PHEAA specifically denies that it repeatedly misrepresents borrowers' PSLF-qualifying payments.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 112, and therefore denies them.  By way of further response, NYAG has not identified any of the borrowers, has not averred that the borrowers are or were New York residents, and in any event concedes that PHEAA remediated two of the three alleged errors.  To the extent that the averments in Paragraph 112 purport to summarize a document, that document speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

> ### iv.    FedLoan's failure to accurately count PSLF-qualifying payments harms borrowers in several ways

113.    Denied.  PHEAA specifically denies that it has failed to accurately count PSLF-qualifying payments.  By way of further response, NYAG has not identified a single New York borrower who was delayed forgiveness or whose time in repayment was prolonged due to improper conduct by PHEAA.  The remaining averments in Paragraph 113 consist of legal conclusions to which no response is required.  Further, the averments contained in the header preceding Paragraph 113 are denied.

114.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 114, and therefore denies them.  By way of further response, NYAG has not identified the borrower and has not averred that the borrower is or was a New York resident.

115.     Denied.  PHEAA lacks sufficient knowledge or information to form a belief as to the generalized averments in Paragraph 115 concerning borrowers' motivations and beliefs, and therefore denies them.  PHEAA denies the remaining averments in Paragraph 115.

116.     Denied.  By way of further response, NYAG has not identified a single New York borrower who was improperly denied forgiveness due to improper conduct by PHEAA.

117.     The averments of Paragraph 117 purport to summarize a report issued by the Department, which speaks for itself.  PHEAA respectfully refers the Court to the report for the contents thereof.  By way of further response, PHEAA incorporates by reference its answers to Paragraphs 74 and 75.

118.     The averments of Paragraph 118 purport to summarize a report issued by the Department, which speaks for itself.  PHEAA respectfully refers the Court to the report for the contents thereof.  By way of further response, PHEAA incorporates by reference its answers to Paragraphs 74 and 75.

119.     Denied.  By way of further response, PHEAA incorporates by reference its answers to Paragraphs 74 and 75.

120.     Denied.  PHEAA specifically denies that its "internal processing handbook is one factor that contributes to [PHEAA's] failure to accurately count PSLF payments," and specifically denies that it fails to accurately count PSLF payments.  The remaining averments of Paragraph 120 purport to summarize and/or quote a Department report, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

121.    The averments of Paragraph 121 purport to summarize and/or quote a GAO Report, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  To the extent there are any remaining averments in Paragraph 121, denied.

122.    Admitted in part and denied in part.  Admitted that the borrower referenced in the article, who was a Washington resident, eventually received loan forgiveness through the Temporary Expanded Public Service Loan Forgiveness Program.  To the extent that the remaining averments in Paragraph 122 purport to summarize a *Wall Street Journal* article, that document speaks for itself.  PHEAA respectfully refers the Court to the article.  The remaining averments of Paragraph 122 are denied.

123.    The averments in Paragraph 123 purport to summarize a legal filing, which speaks for itself, and the averments of that legal filing have been denied.  PHEAA respectfully refers the Court to that document and the response to that document for the contents thereof.  By way of further response, the borrower referred to above is a resident of Illinois, not New York.

124.    Admitted in part and denied in part.  Admitted only that some types of deferments and forbearances result in interest capitalization at their conclusion.  The remaining averments in Paragraph 124 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

125.    The averments in Paragraph 125 consist of legal conclusions to which no response is required.  To the extent response is required, denied.

126.    The averments in Paragraph 126 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

127.    The averments in Paragraph 127 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

**B.    FedLoan fails to timely provide explanations to borrowers for PSLF payment count determinations**

128.    To the extent the averments in Paragraph 128 consist of legal conclusions, no response is required.  PHEAA denies the remaining averments in Paragraph 128, as well as those in the header preceding Paragraph 128.

*i.    FedLoan fails to provide borrowers with explanations for payment determinations when providing initial payment counts*

129.    Admitted in part and denied in part.  Admitted that after a borrower is transferred to PHEAA, PHEAA send the borrower a notification of the number of PSLF-qualifying payments made by the borrower during periods for which the borrower has submitted approved ECFs.  The remaining averments in Paragraph 129, as well as those in the header that precedes Paragraph 129, are denied.

130.    The averments of Paragraph 130 purport to summarize and/or quote a GAO Report, which speaks for itself.  PHEAA respectfully refers the Court to the content thereof.  To the extent there are any remaining averments in Paragraph 130, denied.

131.    Denied as stated.

132.    Denied as stated.

133.    Denied.

134.    Admitted in part and denied in part.  Admitted that some borrowers submit requests to PHEAA for additional information concerning their payment count.  PHEAA denies the remaining averments in Paragraph 134.

### ii. *FedLoan delays excessively in providing borrowers with explanations for its decisions*

135.   Admitted in part and denied in part.  PHEAA admits that it can create forms that detail whether a borrower's payment for a given month qualifies for PSLF.  PHEAA denies NYAG's characterization of these forms, as well as the averments of the header that precedent Paragraph 135.

136.   Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments of Paragraph 136 as to what means a borrower has for determining his or her payment count.  To the extent there are any remaining averments in Paragraph 136, denied.

137.   Admitted.

138.   Denied.  By way of further response, when a borrower requests a detailed payment tracker, PHEAA works diligently to create a detailed payment tracker in accordance with Department guidance.

139.   Admitted.

140.   To the extent the averments of Paragraph 140 consist of legal conclusions, no response is required.  The remaining averments of Paragraph 140 are denied.

141.   Denied.

142.   To the extent that the averments of Paragraph 142 purport to summarize, characterize, and/or quote a document, that document speaks for itself.  PHEAA respectfully refers the Court to the document for the contents thereof.  The remaining averments of Paragraph 142 are denied.

143.   Denied.

144.    Admitted in part and denied in part.  Admitted that when a borrower contacts PHEAA to ask for an explanation as to why a particular payment did not count, the representative will review the borrower's account to address the borrower's inquiry.  The remaining averments in Paragraph 144 are denied.

145.    The averments of Paragraph 145 purport to summarize and/or quote a document, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.   To the extent there are any remaining averments in Paragraph 145, denied.

146.    Denied.

147.    The averments of Paragraph 147 purport to summarize and/or quote a document that speaks for itself.  PHEAA respectfully refers the Court to the content thereof.  To the extent a response is required, denied.

148.    The averments of Paragraph 148 purport to summarize and/or quote a document that speaks for itself.  PHEAA respectfully refers the Court to the content thereof.

149.    Denied.  To the extent that the averments in Paragraph 149 purport to summarize and/or quote a *New York Times* article, that article speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  By way of further response, the article identifies the borrower as a resident of Medford, Massachusetts.  The remaining averments of Paragraph 149 are denied.

150.    Denied.  To the extent that the averments in Paragraph 150 purport to summarize and/or quote a *New York Times* article, that article speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  By way of further response, the article

identifies this borrower as a resident of Sacramento, California.   The remaining averments of Paragraph 150 are denied.

151.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 151, and therefore denies them.  By way of further response, NYAG has not identified any of the borrowers or averred that the borrowers are or were New York residents.  To the extent that the averments in Paragraph 151 purport to summarize and/or quote a document, that document speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

152.    Denied.  To the extent that the averments of Paragraph 152 purport to summarize and/or characterize complaint records, those documents that speak for themselves.   PHEAA respectfully refers the Court to those documents for the contents thereof.  The remaining averments of Paragraph 152 are denied.

153.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 153, and therefore denies them.  By way of further response, NYAG has not identified the borrower or averred that the borrower is or was a New York resident.

154.    PHEAA incorporates by reference its response to Paragraph 153.

155.    PHEAA incorporates by reference its response to Paragraph 153.

### iii.    *Sometimes, FedLoan provides no explanation for its payment counts at all*

156.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 156, and therefore denies them.  By way of further response, NYAG has not identified the borrowers at issue or averred that they are or were New York residents.  To the extent that the averments in Paragraph 156 purport to summarize and/or quote a document, that

document speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  Further, the averments in the header preceding Paragraph 156 are denied.

### iv.   *FedLoan's delays and denials significantly harm borrowers*

157.   The averments of Paragraph 157 consist of legal conclusions to which no response is required.     To the extent a response is required, denied.  Further, the averments in the header preceding Paragraph 157 are denied.

158.   Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the generalized averments in Paragraph 158 concerning the thoughts and actions of unidentified or hypothetical borrowers, and therefore denies the averments in Paragraph 158.

159.   Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the generalized averments in Paragraph 159 concerning the thoughts and actions of unidentified or hypothetical borrowers, and therefore denies the averments in Paragraph 159.

160.   Admitted in part and denied in part.  Admitted that a borrower with FFEL loans may be able to consolidate those loans into a Direct Loan, that FFEL loans are not PSLF-eligible, and that Direct Loans are PSLF-eligible.  The remaining averments in Paragraph 160 are denied.

161.   Admitted in part and denied in part.  Admitted that a borrower may enter "paid ahead" status as the result of making an overpayment, and that a borrower can request to be removed from "paid ahead" status.   PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 161 concerning the knowledge of unidentified or hypothetical borrowers, and therefore denies them.  To the extent that the averments in Paragraph 161 consist of legal conclusions, no response is required.  PHEAA denies the remaining averments in Paragraph 161.

162.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 162, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

163.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the generalized averments in Paragraph 163 concerning the knowledge of unidentified or hypothetical borrowers, and therefore denies them.

164.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 164 regarding communications between borrowers and a different loan servicer, and therefore denies them.

165.    Admitted in part and denied in part.  Admitted that certain repayment plans are PSLF-eligible and others are not, and that switching repayment plans sometimes requires a borrower request or application.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 165 concerning knowledge and conduct of unidentified or hypothetical borrowers, and therefore denies them.

166.    Admitted in part and denied in part.  Admitted that whether a borrower receives PSLF credit for a given month depends on whether during that month, among other things, the borrower had a qualifying loan type, was on a qualifying repayment plan, worked for a qualifying employer, and made a full on-time monthly payment.  The remaining averments in Paragraph 166 are denied.

167.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the generalized averments of Paragraph 167 concerning knowledge and conduct of unidentified or hypothetical borrowers.  PHEAA therefore denies the averments in Paragraph 167.

168.    Denied.

169.    Denied.  By way of further response, NYAG has not identified any New York borrower who has abandoned public service due to inaccurate payment counts.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments of Paragraph 169 concerning the potential decisions of unidentified or hypothetical borrowers, and therefore denies them.

170.    Denied.  By way of further response, NYAG has not identified any New York borrower who has abandoned public service due to inaccurate payment counts.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments of Paragraph 170 concerning the potential decisions of unidentified or hypothetical borrowers, and therefore denies them.

171.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 171 concerning the borrower's alleged complaint.  By way of further response, NYAG has not identified the borrower, or averred that the borrower was a New York resident.

172.    Denied.

173.    The averments in Paragraph 173 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

174.    The averments of Paragraph 174 consist of legal conclusions to which no response is required.   To the extent a response is required, denied.

### C.   PHEAA fails to timely and accurately process income-driven repayment plan paperwork

175.    Admitted in part and denied in part.  PHEAA admits only the averments in footnote 23.  To the extent the averments of Paragraph 175 consist of legal conclusions, no response is required.  PHEAA denies the remaining averments of Paragraph 175 and the header preceding Paragraph 175.

176.    Admitted that PHEAA, consistent with regulatory and contractual requirements, processes borrowers' income-driven repayment (IDR) applications and determines whether they qualify and what monthly payment they must make.  To the extent the averments of Paragraph 176 consist of legal conclusions, no response is required.

177.    Admitted that PHEAA, consistent with regulatory and contractual requirements, processes borrowers' annual IDR recertifications and updates their monthly payment amounts, if necessary.  The remaining averments of Paragraph 177 purport to summarize federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the applicable federal regulations for the content thereof.

178.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the generalized averments in Paragraph 178 concerning the financial situation of unidentified or hypothetical borrowers, and therefore denies them.

179.    Admitted.

180.    Denied.  By way of further response, PHEAA calculates IDR payment amounts in accordance with its regulatory and contractual obligations, as determined, reviewed, and overseen by the Department.

181.    Denied.  By way of further response, PHEAA maintains borrowers in their existing repayment plan during recertification processing.

182.    Denied.

###    i.    PHEAA's errors in determining payment amounts impose financial difficulties on distressed borrowers

183.    Denied.  By way of further response, PHEAA calculates IDR payment amounts in accordance with its regulatory and contractual obligations, as determined, reviewed, and overseen by the Department.  Further, PHEAA denies the averments in the header preceding Paragraph 183.

184.    Denied.  By way of further response, PHEAA calculates IDR payment amounts in accordance with its regulatory and contractual obligations, as determined, reviewed, and overseen by the Department.

185.    Denied.  By way of further response, PHEAA calculates IDR payment amounts in accordance with its regulatory and contractual obligations, as determined, reviewed, and overseen by the Department.

186.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 186 concerning the borrower's alleged complaint, and therefore denies them.  NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

187.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 187 concerning the borrower's alleged complaint, and therefore denies them.  NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

188.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 188 concerning the borrower's alleged complaint, and therefore denies them.  NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

189.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 189 concerning the borrower's alleged complaint, and therefore denies them.  NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

190.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 190 concerning the borrower's alleged complaint, and therefore denies them.  NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

> ii.    *PHEAA's errors in calculating payment amounts or verifying recertification can force borrowers into costly forbearances*

191.    Denied.  Further, PHEAA denies the averments in the header preceding Paragraph 191.

192.    Denied.

193.    Admitted in part and denied in part.  Admitted that unpaid interest accrues for some, but not all, forbearances.  The remaining allegations of Paragraph 193 are denied.

194.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 194 concerning reports from unidentified borrowers, and therefore denies them.

195.     Admitted in part and denied in part.  It is admitted that interest capitalization adds to the principal balance of borrowers' loans.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 195 concerning unidentified or hypothetical borrowers, and therefore denies them.

196.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 196 concerning the understandings of unidentified or hypothetical borrowers, and therefore denies them.

197.     Denied.

198.     The averments in Paragraph 198 consist of legal conclusions to which no response is required.

199.     Admitted in part and denied in part.  Admitted that if a servicer incorrectly concludes that the borrower has not filed a timely annual recertification form to remain on an IDR plan, the borrower's interest may be incorrectly capitalized as a result.  The remaining averments in Paragraph 199 are denied.

200.     Denied.  By way of further response, PHEAA maintains borrowers in their existing repayment plan during recertification processing.

       *iii.*     ***PHEAA's errors also deprive borrowers of the opportunity to progress towards loan forgiveness***

201.     The averments in Paragraph 201 and the header preceding Paragraph 201 are denied.  The averments in footnote 24 consist of legal conclusions to which no response is required.

202.     Denied that borrowers "must go into forbearance while waiting for PHEAA to fix its mistakes."  The remaining averments in Paragraph 202 consist of legal conclusions to which no response is required.  To the extent there are any remaining averments in Paragraph 202, denied.

203.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 203 and footnote 26 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrowers, or averred that the borrowers are or were New York residents.

204.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 204 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

205.     The averments contained in Paragraph 205 purport to summarize or quote from a 2017 FSA report, which speaks for itself.  PHEAA respectfully refers the Court to the report for the content thereof.  The remaining averments in Paragraph 205 are denied.

> ### iv.     *PHEAA even removes borrowers from IDR plans in which they have successfully enrolled*

206.     To the extent that the averments in Paragraph 206 consist of legal conclusions, no response is required.  PHEAA denies the remaining averments in Paragraph 206 and the header preceding Paragraph 206.

207.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 207 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

208.    PHEAA incorporates by reference its answer to Paragraph 207.

209.    PHEAA incorporates by reference its answer to Paragraph 207.

210.    PHEAA incorporates by reference its answer to Paragraph 207.

211.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 211 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

212.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 212 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

213.    PHEAA incorporates by reference its answer to Paragraph 212.

214.    PHEAA incorporates by reference its answer to Paragraph 212.

215.    PHEAA incorporates by reference its answer to Paragraph 212.  To the extent that the averments in Paragraph 215 purport to summarize and/or quote a document, that document speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

216.    PHEAA incorporates by reference its answer to Paragraph 212.

217.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 217 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

218.   Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 218 concerning the reports of unidentified borrowers, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

219.   The averments in Paragraph 219 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

220.   The averments in Paragraph 220 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

221.   The averments in Paragraph 221 consist of legal conclusions to which no response is required.   To the extent a response is required, denied.

**D.      PHEAA treats borrowers inconsistently, failing to provide some borrowers with relief addressing the consequences of its own errors and information necessary to correct problems with their eligibility**

222.   Denied.  By way of further response, PHEAA remediates PSLF-related errors pursuant to direction from and with the authorization of the Department.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 222 because the term "difficulties with eligibility" is unreasonably vague and ambiguous.  PHEAA therefore denies the remaining averments in Paragraph 222 and the header preceding Paragraph 222.

223.   Denied.  By way of further response, PHEAA remediates PSLF-related errors pursuant to direction from and with the authorization of the Department.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 223 because the terms "problem," "mistake," and "error" are unreasonably vague and ambiguous.  PHEAA therefore denies the remaining averments in Paragraph 223.

224.     The averments in Paragraph 224 purport to summarize a GAO report, which speaks for itself.  PHEAA respectfully refers the Court to the report for the content thereof.  The remaining averments in Paragraph 224 are denied.

225.     The averments in Paragraph 225 purport to summarize a GAO report, which speaks for itself.  PHEAA respectfully refers the Court to the report for the content thereof.  The remaining averments in Paragraph 225 are denied.

226.     The averments of Paragraph 226 purport to summarize and/or quote a GAO Report, which speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.  The remaining averments in Paragraph 226 are denied.

227.     Denied.  By way of further response, PHEAA's customer service representatives undergo extensive training before interacting with borrowers, and such interactions are subject to regular quality assurance reviews.

228.     Denied.

### i.     *Reclassifying payments made during forbearance as PSLF-qualifying*

229.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 229 regarding the content of unspecified and undated documents, and therefore denies them.  Further, to whatever extent a response is required to the header preceding Paragraph 229, denied.

230.     Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 230 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the

borrower is or was a New York resident.  PHEAA lacks sufficient knowledge or information to form a belief as to the averments in footnote 31 regarding the preferences of unidentified or hypothetical borrowers and therefore denies the averments.

231.    PHEAA incorporates by reference its answer to Paragraph 230.

232.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 232 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

233.    PHEAA incorporates by references its answer to Paragraph 232.  To the extent that the averments in Paragraph 233 purport to summarize and/or quote a document, that document speaks for itself.  PHEAA respectfully refers the Court to that document for the contents thereof.

234.    Denied.

235.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 235 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

236.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 236 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

237.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 237 concerning the borrower's alleged complaint, and therefore denies

them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

238.    Denied.  PHEAA lacks sufficient knowledge or information to form a belief as to the averments in Paragraph 238 concerning unidentified or hypothetical borrowers, and therefore denies them.

239.    The averments in Paragraph 239 consist of legal conclusions to which no response is required.     To the extent a response is required, denied.

240.    The averments in Paragraph 240 consist of legal conclusions to which no response is required.  To the extent a response is required, denied.

241.    The averments in Paragraph 241 consist of legal conclusions to which no response is required.     To the extent a response is required, denied.

### ii.      Retroactive reapplication of payments to eliminate "paid-ahead status"

242.    Denied.  Further, to whatever extent a response is required to the header preceding Paragraph 242, denied.

243.    Admitted.

244.    Admitted.

245.    Admitted.

246.    Admitted.

247.    Admitted in part and denied in part.  PHEAA admits that when a borrower is in paid ahead status, the borrower will receive a $0 billing statement or a bill for less than the monthly installment amount during the period that the borrower remains in paid ahead status.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 247 concerning a hypothetical borrower in paid ahead status, and therefore denies them.

248.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 248 concerning unidentified or hypothetical borrowers, and therefore denies them.

249.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 249 concerning unidentified or hypothetical borrowers, and therefore denies them.

250.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 250 concerning unidentified or hypothetical borrowers, and therefore denies them.

251.    Admitted in part and denied in part.  Admitted that PHEAA refers certain borrower requests to the Department for an "override," which may result in certain payments being deemed as qualifying for purposes of PSLF.  The remaining averments in Paragraph 251 are denied.

252.    Denied.

253.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 253 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

254.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 254 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

255.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 255 concerning unidentified borrowers, and therefore denies them.

256.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 256 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

257.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 257 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, or averred that the borrower is or was a New York resident.

258.    The averments of Paragraph 258 and footnote 34 purport to summarize the language on PHEAA's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.  By way of further response, the content of PHEAA's website is developed at the direction of the Department and approved by the Department.  To the extent any further response is required to Paragraph 258 or footnote 34, denied.

259.    The averments of Paragraph 259 purport to summarize the language on PHEAA's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.  By way of further response, the content of PHEAA's website is developed at the

direction of the Department and approved by the Department.  To the extent any further response is required to Paragraph 259, denied.

260.   Denied.

261.   Denied.

262.   Denied.

263.   To the extent that the averments in Paragraph 263 purport to summarize or characterize PHEAA's obligations under its contract with the Department, that document speaks for itself, and PHEAA respectfully refers the Court to the content thereof.  To the extent that the averments in Paragraph 263 consist of legal conclusions, no response is required.  To the extent any response is required, denied.

264.   The averments of Paragraph 264 consists of legal conclusions, to which no response is required.  To the extent any response is required, denied.

265.   The averments in Paragraph 265 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

266.   The averments in Paragraph 266 consist of legal conclusions to which no response is required.   To the extent any response is required, denied.

267.   The averments in Paragraph 267 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

### iii. *Providing misinformation to PSLF borrowers about the option to appeal FedLoan determinations*

268.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 268 concerning unidentified borrowers and therefore denies them. PHEAA denies the averments in the header preceding Paragraph 268.

269.    Denied.

270.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 270 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, and has not averred whether the borrower is or was a New York resident.

271.    Denied.

272.    Denied.

273.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 273 concerning the borrower's alleged complaint, and therefore denies them.  By way of further response, NYAG has not identified the borrower, and has not averred whether the borrower is or was a New York resident.

274.    The averments in Paragraph 274 consist of legal conclusions to which no response is required.     To the extent any response is required, denied.

275.    The averments in Paragraph 275 consist of legal conclusions to which no response is required.     To the extent any response is required, denied.

276.    The averments in Paragraph 276 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

### E.    PHEAA steers borrowers to less favorable options rather than income-driven repayment plans

#### i.    Forbearance steering

277.    Admitted that IDR plans are available for some federal student loan borrowers based on income and family size, with the remaining balance forgiven after 20 or 25 years of qualifying payments, and that enrollment in IDR can result in payments as low as $0 per month, depending on the borrower's income and family size.  The remaining averments in Paragraph 277 are denied.  By way of further response, PHEAA calculates IDR payment amounts in accordance with its regulatory and contractual obligations, as determined, reviewed, and overseen by the Department.  The averments in the headers preceding Paragraph 277 are denied.

278.    The averments of Paragraph 278 purport to summarize a GAO Report, which speaks for itself.  PHEAA respectfully refers the Court to the GAO Report for the contents thereof.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 278, and therefore denies them.

279.    The averments of Paragraph 279 purport to summarize a GAO Report, which speaks for itself.  PHEAA respectfully refers the Court to the GAO Report for the contents thereof.  PHEAA lacks knowledge or information sufficient to form a belief as to the remaining averments in Paragraph 279, and therefore denies them.

280.    Admitted.

281.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 281 concerning the appropriate repayment plan for hypothetical borrowers, and therefore denies them.

282.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 282 concerning the knowledge of unidentified or hypothetical borrowers, and therefore denies them.

283.    Admitted that for a borrower to enroll in an IDR plan, the borrower must submit an application along with income documentation, and that borrowers in IDR must recertify their income and family size each year.  The remaining averments of Paragraph 283 are denied.

284.    Admitted that under some circumstances, a borrower can request and receive a forbearance telephonically, and that some forms of forbearance are not conditioned on verification of income or family size.  The remaining averments of Paragraph 284 are denied.

285.    The averments of Paragraph 285 purport to quote, summarize, or characterize the language on PHEAA's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.  By way of further response, the content of PHEAA's website is developed at the direction of the Department and approved by the Department.  The remaining averments of Paragraph 285 are denied.

286.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 286 concerning the knowledge or beliefs of unidentified or hypothetical borrowers, and therefore denies them.

287.    Denied.

288.    The averments of Paragraph 288 purport to summarize a report issued by the U.S. Department of Education's Office of Inspector General (OIG), which speaks for itself.  PHEAA respectfully refers the Court to the OIG Report for the contents thereof.

289.    The averments of Paragraph 289 purport to summarize an OIG Report, which speaks for itself.  PHEAA respectfully refers the Court to the OIG Report for the contents thereof.

290.    The averments of Paragraph 290 purport to summarize an OIG Report, which speaks for itself.  PHEAA respectfully refers the Court to the OIG Report for the contents thereof.

291.    The averments of Paragraph 291 purport to summarize an OIG Report, which speaks for itself.  PHEAA respectfully refers the Court to the OIG Report for the contents thereof.

292.    The averments of Paragraph 292 purport to summarize an OIG Report, which speaks for itself.  PHEAA respectfully refers the Court to the OIG Report for the contents thereof. To the extent any response is required, denied.

293.    Denied.  PHEAA lacks knowledge or information sufficient to form a belief as to the averments in Paragraph 293 concerning the knowledge or beliefs of unidentified or hypothetical borrowers, and therefore denies them.

294.    Denied.

295.    Denied.

### ii. Consolidation steering

296.    The averments of Paragraph 296 purport to summarize or characterize the terms of PHEAA's contract with the Department, which speaks for itself.  PHEAA respectfully refers the Court to the document for the content thereof.

297.    The averments of Paragraph 297 purport to summarize federal regulations concerning consolidation, which speak for themselves.  PHEAA respectfully refers the Court to those regulations for the content thereof.  To whatever extent there are any remaining averments, denied.

298.    The averments of Paragraph 298 purport to summarize federal regulations and the terms of PHEAA's contract with the Department concerning consolidation, which speak for themselves.  PHEAA respectfully refers the Court to those documents for the content thereof.  To whatever extent a response is required, denied.

299.    Denied.

300.    The averments of Paragraph 300 purport to quote, summarize, or characterize the language on PHEAA's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.  By way of further response, the content of PHEAA's website is developed at the direction of the Department and approved by the Department.

301.    PHEAA incorporates by reference its response to Paragraph 300.

302.    PHEAA incorporates by reference its response to Paragraph 300.

303.    The averments of Paragraph 303 purport to summarize the content of federal regulations, which speak for themselves.  PHEAA respectfully refers the Court to the applicable regulations for the content thereof.  To whatever extent there are any remaining averments, denied.

304.    PHEAA incorporates by reference its response to Paragraph 300.

305.    PHEAA incorporates by reference its response to Paragraph 300.

306.    PHEAA incorporates by reference its response to Paragraph 300.

307.    PHEAA incorporates by reference its response to Paragraph 300.

308.    The averments in Paragraph 308 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

309.    The averments in Paragraph 309 purport to summarize PHEAA customer service guides, which speak for themselves.  PHEAA respectfully refers the Court to these documents for the content thereof.  To whatever extent there are any remaining averments, denied.

310.    The averments of Paragraph 310 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

311.    The averments of Paragraph 311 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

312.    The averments of Paragraph 312 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

313.    The averments in Paragraph 313 consist of legal conclusions to which no response is required.      To the extent any response is required, denied.

314.    The averments in Paragraph 314 consist of legal conclusions to which no response is required.      To the extent any response is required, denied.

315.    The averments in Paragraph 315 consist of legal conclusions to which no response is required.      To the extent any response is required, denied.

**F.      PHEAA wrongfully denies access to deferments for eligible borrowers with cancer**

316.    The averments of Paragraph 316 purport to summarize 20 U.S.C. § 1087e(f)(3), which is a statute that speaks for itself.  PHEAA respectfully refers the Court to the statute for the content thereof.   Further, PHEAA denies the averments in the heading preceding Paragraph 316.

317.    Denied.

318.    Denied.

319.    The averments of Paragraph 319 purport to summarize the language on PHEAA's website, which speaks for itself.  PHEAA respectfully refers the Court to the website for the content thereof.  By way of further response, the content of PHEAA's website is developed at the direction of the Department and approved by the Department.  To the extent any further averments remain, denied.

320.    Denied.

321.     Admitted that the Department did not issue an approved application form for the cancer deferment until August 2019.  To the extent the averments in Paragraph 321 consist of legal conclusions, no response is required.  To the extent any further averments remain, denied.

322.     The averments in Paragraph 322 consist of legal conclusions to which no response is required.      To the extent any response is required, denied.

323.     The averments in Paragraph 323 consist of legal conclusions to which no response is required.      To the extent any response is required, denied.

324.     The averments in Paragraph 324 consist of legal conclusions to which no response is required.      To the extent any response is required, denied.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### U.S.C. § 5531 (Dodd-Frank) (Deceptive Practices)

325.     PHEAA incorporates its responses to Paragraphs 1 through 324 as if fully set forth herein.

326.     The averments in Paragraph 326 consist of legal conclusions to which no response is required.

327.     The averments in Paragraph 327 consist of legal conclusions to which no response is required.

328.     The averments in Paragraph 328 consist of legal conclusions to which no response is required.

329.     The averments in Paragraph 329 consist of legal conclusions to which no response is required.

330.     The averments in Paragraph 330 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

331.     The averments in Paragraph 331 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

## SECOND CAUSE OF ACTION
### 12 U.S.C. § 5531 (Dodd-Frank) (Unfair Practices)

332.     PHEAA incorporates its responses to Paragraphs 1 through 331 as if fully set forth herein.

333.     The averments in Paragraph 333 consist of legal conclusions to which no response is required.

334.     The averments in Paragraph 334 consist of legal conclusions to which no response is required.

335.     The averments in Paragraph 335 consist of legal conclusions to which no response is required.

336.     The averments in Paragraph 336 consist of legal conclusions to which no response is required.

337.     The averments in Paragraph 337 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

338.     The averments in Paragraph 338 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

339.     The averments in Paragraph 339 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

340.     The averments in Paragraph 340 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

## THIRD CAUSE OF ACTION
## 12 U.S.C. § 5531 (Dodd-Frank) (Abusive Practices)

341.     PHEAA incorporates its responses to Paragraphs 1 through 340 as if fully set forth herein.

342.     The averments in Paragraph 342 consist of legal conclusions to which no response is required.

343.     The averments in Paragraph 343 consist of legal conclusions to which no response is required.

344.     The averments in Paragraph 344 consist of legal conclusions to which no response is required.

345.     The averments in Paragraph 345 consist of legal conclusions to which no response is required.

346.     The averments in Paragraph 346 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

## FOURTH CAUSE OF ACTION
## EXECUTIVE LAW § 63(12) (FRAUD)

347.     PHEAA incorporates its responses to Paragraphs 1 through 346 as if fully set forth herein.

348.     The averments in Paragraph 348 consist of legal conclusions to which no response is required.

349.     The averments in Paragraph 349 consist of legal conclusions to which no response is required.

350.     The averments in Paragraph 350 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

351.     The averments in Paragraph 351 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

## FIFTH CAUSE OF ACTION
### EXECUTIVE LAW § 63(12) (N.Y. GBL § 349)

352.     PHEAA incorporates its responses to Paragraphs 1 through 351 as if fully set forth herein.

353.     The averments in Paragraph 353 consist of legal conclusions to which no response is required.

354.     The averments in Paragraph 354 consist of legal conclusions to which no response is required.

355.     The averments in Paragraph 355 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

356.     The averments in Paragraph 356 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

## SIXTH CAUSE OF ACTION
### GBL § 349

357.     PHEAA incorporates its responses to Paragraphs 1 through 356 as if fully set forth herein.

358.    The averments in Paragraph 358 consist of legal conclusions to which no response is required.

359.    The averments in Paragraph 359 consist of legal conclusions to which no response is required.  To the extent any response is required, denied.

## RELIEF REQUESTED

PHEAA denies that the NYAG is entitled to any relief.  **WHEREFORE**, PHEAA respectfully requests judgment in its favor, dismissing NYAG's Complaint with prejudice and such other relief as the Court deems appropriate.

*****

## AFFIRMATIVE DEFENSES

PHEAA asserts the following affirmative and other defenses.  PHEAA reserves the right to assert additional defenses at such time and to such extent as warranted by discovery and the factual developments of this case.

## FIRST DEFENSE

The Complaint addresses specific practices of PHEAA that are either required or authorized by federal statutes, federal regulations, or PHEAA's contract with the U.S. Department of Education.  Any claim that PHEAA's specific practices violate state law, while being consistent with federal law and/or the guidance or instruction of the U.S. Department of Education, is preempted under the Supremacy Clause of the U.S. Constitution. U.S. Const. art. VI, cl. 2.

## SECOND DEFENSE

Under Federal Rule of Civil Procedure 19, NYAG has failed to join an indispensable party, the U.S. Department of Education.

**THIRD DEFENSE**

With respect to the alleged conduct, PHEAA was acting as an agent of the United States Government pursuant to the terms of a contract with the United States.  No action is available against the United States or its agents under the CFPA.

**FOURTH DEFENSE**

The CFPB failed to declare through rulemaking that the acts or practices identified in the Complaint were unlawful, as required by the CFPA.  NYAG is not authorized under the CFPA to bring this enforcement action with respect to those acts and/or practices.

**FIFTH DEFENSE**

NYAG's claims are barred, in whole or in part, for failure to state a claim upon which relief may be granted.

**SIXTH DEFENSE**

NYAG cannot prove that any individual borrower suffered damages resulting from PHEAA's alleged actions.

**SEVENTH DEFENSE**

NYAG cannot prove that PHEAA proximately caused any foreseeable or actual damages, injuries, or losses to borrowers.

**EIGHTH DEFENSE**

Superseding or intervening acts, such as the actions taken by borrowers or other third parties, caused or contributed to the cause of any losses and/or damages alleged in the Complaint.

**NINTH DEFENSE**

NYAG's claims are barred to the extent they improperly plead conduct outside of the relevant statutes of limitations.

**TENTH DEFENSE**

NYAG's claims are barred, in whole or in part, by the doctrine of laches, waiver, and/or estoppel.

### ELEVENTH DEFENSE

Injunctive relief is inappropriate because there is no reasonable likelihood that PHEAA will repeat any alleged violation in the Complaint.

### TWELFTH DEFENSE

NYAG's claims are barred, in whole or in part, because PHEAA has derivative immunity from suit as a federal contractor under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940) and *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

### THIRTEENTH DEFENSE

NYAG's claims are barred, in whole or in part, by the doctrine of intergovernmental immunity.

*****

WHEREFORE, PHEAA denies any liability whatsoever and demands judgment in its favor and against NYAG together with costs and fees and any other relief awarded by the Court.

DATED:  New York, New York
        June 12, 2020

Respectfully submitted,

*/s/ John C. Grugan*
Marjorie Peerce (1921683)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: (212) 223-0200
Facsimile: (212) 223-1942

John C. Grugan (*admitted pro hac vice*)
Thomas F. Burke (4594230)
Brittany M. Wilson (*admitted pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant Pennsylvania
Higher Education Assistance Agency*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2020, I served a true and correct copy of the foregoing via ECF upon the following:

Sarah E. Trombley
NYS Office of the Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-8294
sarah.trombley@ag.ny.gov

Jane M. Azia
NYS Office of the Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-6003
jane.azia@ag.ny.gov

Carolyn M. Fast
NYS Office of the Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-6250
carolyn.fast@ag.ny.gov

Laura Levine
NYS Office of the Attorney General
28 Liberty St.
New York, NY 10005
(212) 416-8313
laura.levine@ag.ny.gov

*/s/ Thomas F. Burke*
Marjorie Peerce (1921683)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: (212) 223-0200
Facsimile: (212) 223-1942

John C. Grugan (*admitted pro hac vice*)
Thomas F. Burke (4594230)
Brittany M. Wilson (*admitted pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant Pennsylvania
Higher Education Assistance Agency*