**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES,
Attorney General of the State of New York,

Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, d/b/a FEDLOAN SERVICING and AMERICAN EDUCATION SERVICES,

Defendant.

Case No. 19-cv-9155 (ER)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 37**

Letitia James
Attorney General for the State of New York
By: Carolyn M. Fast
Assistant Attorney General
Hailey DeKraker
Assistant Attorney General
Consumer Frauds and Protection Bureau
28 Liberty St.
New York, NY 10005
Tel: 212-416-6250 (Fast)
Tel: 212-416-6315 (DeKraker)

JANE M. AZIA
Bureau Chief

LAURA J. LEVINE
Deputy Bureau Chief

*of Counsel*

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ..... 2

II. LEGAL STANDARD ..... 4

III. ARGUMENT ..... 4

A. NYAG is Entitled to Relevant Documents Created During the Disputed Period, Regardless of the Applicable Statute of Limitations for NYAG's Claims. ..... 4

B. C.P.L.R. § 213(9)'s Six-Year Statute of Limitations Applies Retroactively to NYAG's Executive Law § 63(12) Claims ..... 8

C. NYAG is Also Entitled to Relevant Documents Created During the Disputed Period Pursuant to the "Continuing Violation" Doctrine ..... 13

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Edmondson v. RCI Hosp. Holdings, Inc.*,
No. 16-CV-2242, 2018 WL 2768643 (S.D.N.Y. June 8, 2018) ....................4

*EEOC v. Kansas City S. Ry.*,
195 F.R.D. 678 (D. Kan. 2000)....................4

*Favors v. Cuomo*,
No. 11-CV-5632, 2013 WL 12358269 (E.D.N.Y. Aug. 27, 2013)....................1, 4, 8

*Fort IV Group, L.P. v. 624 W. 172nd St. LLC*,
No. 151959/2012, 2013 WL 4035349 (Sup. Ct. N.Y. Cnty. Aug. 6, 2013) ....................13

*Gottesman v. Santana*,
16-cv-2902, 2017 WL 5889765 (S.D. Cal. Nov. 29, 2017)....................5

*Harvey v. Metro. Life Ins. Co.*,
21 Misc. 3d 1142(A) (Sup. Ct. N.Y. Cnty. 2005), *aff'd*, 34 A.D.3d 364 (1st Dep't 2006) ....................13

*MacCartney v. O'Dell*,
No. 14-CV-3925, 2017 WL 766906 (S.D.N.Y. Feb. 27, 2017)....................4

*Matter of Gleason v. Michael Vee, Ltd.*,
96 N.Y.2d 117 (2001) .................... 9-10

*Matter of Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*,
35 N.Y.3d 332 (2020) .................... 11-12

*Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
30 N.Y.3d 377 (2017) ....................13

*Morelli v. Weider Nutrition Group, Inc.*,
712 N.Y.S.2d 551 (1st Dep't 2000) ....................9

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)....................4

*People v. Allen*,
No. 452378/2019, 2021 WL 394821 (Sup. Ct. N.Y. Cnty. Feb. 4, 2021) .................... 2, 8-10

*People v. Credit Suisse Sec. (USA) LLC*,
31 N.Y.3d 622 (2018) .................... *passim*

*People v. Trump*,
88 N.Y.S.3d 830 (Sup. Ct. N.Y. Cnty. 2018) ....................2, 14

*People v. Trump Entrepreneur Initiative, LLC*,
26 N.Y.S.3d 66 (1st Dep't 2016) ....................9

*Remigio v. Kelly*,
No. 04 CIV 1877, 2005 WL 1950138 (S.D.N.Y. Aug. 12, 2005) ....................14

*Selkirk v. State*,
249 A.D.2d 818 (3d Dep't 1998) ....................13, 15

*State v. Cortelle*,
38 N.Y.2d 83 (1975) ....................9

*State v. County Bank of Rehoboth Beach*,
846 N.Y.S.2d 436 (3d Dep't 2007) ....................9

**CONSTITUTIONS**

N.Y. Const. art. I § 6 ....................13

**FEDERAL STATUTES**

12 U.S.C. § 5301 *et seq.* ....................3

**STATE STATUTES**

Executive Law § 63(12) .................... *passim*

General Business Law § 349 ....................3

**RULES**

C.P.L.R. § 213(1) ....................9

C.P.L.R. § 213(9) .................... *passim*

C.P.L.R. § 214(2) ....................9

Fed. R. Civ. P. 26(b)(1) ....................4

Fed. R. Civ. P. 37 ....................1

Fed. R. Civ. P. 37(a) ....................1

Plaintiff the New York Attorney General's Office ("NYAG") moves pursuant to Federal Rule 37 to compel defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") to produce documents created during the period of October 3, 2013 and August 26, 2016 that are responsive to NYAG's First Amended Request for Production of Documents and Electronically Stored Information, dated June 23, 2020 ("the RFP"), attached hereto as Exhibit A.[1] NYAG certifies, pursuant to Federal Rule 37(a), that NYAG has, in good faith, met and conferred with PHEAA regarding production of documents created during the period of October 3, 2013 through August 26, 2016 (the "Disputed Period"). The parties have been unable to reach a resolution concerning production of those documents. PHEAA asserts relevancy and statute of limitations grounds for its refusal to produce those documents. PHEAA is wrong.

First, regardless of the applicable statute of limitations for NYAG's Exec. Law § 63(12) claims, NYAG is entitled to production of documents responsive to the RFP for the Disputed Period because those documents are relevant to NYAG's actionable claims. *See, e.g.*, *Favors v. Cuomo*, No. 11-CV-5632 (DLI)(RR)(GEL), 2013 WL 12358269, at *4 (E.D.N.Y. Aug. 27, 2013). The categories of documents requested in the RFP include requests for PHEAA's internal communications related to each of NYAG's claims; PHEAA's communications with borrowers related to NYAG's claims; borrower complaints related to NYAG's claims; and PHEAA's audits and quality-assurance efforts related to NYAG's claims. *See* RFP, attached as Exhibit A. The

[1] NYAG exempts documents related to the deferment option for borrowers suffering from cancer (the "Cancer Deferment") from this motion. In contrast to the income-driven repayment and Public Service Loan Forgiveness programs, which PHEAA has administered for more than a decade, the Cancer Deferment first became available in September 2018. Accordingly, NYAG does not seek documents related to the Cancer Deferment for the October 3, 2013 through August 26, 2016 period.

requested documents are relevant to NYAG's claims, regardless of the timing of their creation, because the documents relate to the ongoing misconduct and ongoing interactions between PHEAA and borrowers that are the basis for NYAG's claims.

In addition, PHEAA is wrong about the statute of limitations applicable to the NYAG's claims. On August 26, 2019, prior to the commencement of this lawsuit, the New York Legislature enacted C.P.L.R. § 213(9) to clarify that the statute of limitations for Attorney General enforcement under Executive Law § 63(12) and the Martin Act is six years. This six-year statute of limitations applies retroactively to NYAG's Exec. Law § 63(12) claims. *See People v. Allen*, No. 452378/2019, 2021 WL 394821, at *5 (Sup. Ct. N.Y. Cnty. Feb. 4, 2021).

Finally, NYAG is entitled to the documents created during the Disputed Period because PHEAA's continued wrongs tolled the statute of limitations pursuant to the "continuing violation" doctrine. Accordingly, NYAG is entitled to seek relief for borrowers harmed by PHEAA's conduct during the Disputed Period. *See People v. Trump*, 88 N.Y.S.3d 830, 837-38 (Sup. Ct. N.Y. Cnty. 2018) (denying a motion to dismiss the NYAG's claim under the Not-For-Profit Corporation Law on timeliness grounds because the NYAG alleged a continuing violation lasting into the limitations period).

## I. FACTUAL BACKGROUND

Hundreds of thousands of federal student loan borrowers depend on PHEAA to help them navigate the complex world of loan repayment and forgiveness options. PHEAA controls these borrowers' payment records, calculates their monthly payments in repayment plans for distressed borrowers, tracks qualifying payments for borrowers working toward loan forgiveness through the Public Service Loan Forgiveness ("PSLF") program, and makes the official determinations concerning when borrowers can qualify for loan forgiveness through the PSLF program.

Unfortunately, PHEAA's performance of these vital tasks has been incredibly deficient. PHEAA has repeatedly given borrowers misinformation and engaged in practices that are unfair or abusive. It has ignored countless payments by borrowers that should have counted towards forgiveness (causing some to be unfairly denied that forgiveness), failed to calculate monthly payments for repayment plans even when the borrowers apply by the statutory deadline, improperly dropped borrowers from repayment plans they were already enrolled in, and misinformed borrowers as to the benefits of certain loan options. When borrowers have asked for explanations or corrections, it frequently takes PHEAA months, sometimes *more than a year*, to provide explanations for its decisions. PHEAA even deceives borrowers about whether they can appeal its determinations at all.

NYAG brought this action to challenge PHEAA's deceptive, unfair and abusive practices under the Dodd-Frank Act, 12 U.S.C. § 5301 *et seq.*, New York Executive Law § 63(12), and General Business Law § 349. NYAG's Complaint was filed on October 3, 2019. PHEAA subsequently moved to dismiss the Complaint. On May 1, 2020, this Court issued an Order and Opinion granting PHEAA's motion to dismiss NYAG's state law claim that PHEAA steered borrowers into less-favorable repayment options and denying PHEAA's motion to dismiss NYAG's federal claims and NYAG's remaining state law claims (Docket No. 50). NYAG subsequently served PHEAA with the RFP. With limited exceptions for certain policy documents and some borrower data, PHEAA has refused to produce documents responsive to the RFP that were created during the Disputed Period. NYAG has met and conferred with PHEAA concerning production of those documents. The parties have been unable to reach an agreement concerning production of the documents.

## II. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242, 2018 WL 2768643, at *1 (S.D.N.Y. June 8, 2018) (*quoting Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)); *MacCartney v. O'Dell*, No. 14-CV-3925, 2017 WL 766906, at *3 (S.D.N.Y. Feb. 27, 2017) ("It is well-established within this Circuit that the rule will be satisfied if there is 'any possibility' that the information sought may be relevant to the subject matter of the action.").

## III. ARGUMENT

### A. NYAG is Entitled to Relevant Documents Created During the Disputed Period, Regardless of the Applicable Statute of Limitations for NYAG's Claims.

NYAG is entitled to discovery of relevant documents created in the period of October 3, 2013 through August 26, 2016, regardless of the applicable statute of limitations for NYAG's Exec. Law § 63(12) claims. Discovery is not limited by a statute of limitations period where "the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Favors v. Cuomo*, 2013 WL 12358269, at *4 (E.D.N.Y. Aug. 27, 2013) ("By its plain language, Rule 26 imposes no temporal limitation on discovery. . . . Accordingly, courts routinely hold that it is the relevance of the information contained in the requested documents – not the timing of events in relation to their creation – that determines discoverability."). *See also*, *EEOC v. Kansas City S. Ry.*, 195 F.R.D. 678, 679 (D. Kan. 2000) ("[W]ith regard to temporal scope, discovery of information both before and after the liability period" may be relevant, and "courts commonly extend the scope of discovery to a reasonable

number of years both prior to and following such period."); *Gottesman v. Santana*, 16-cv-2902, 2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017) ("The statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery."). Accordingly, even if the statute of limitations for NYAG's Exec. Law § 63(12) claims were three years, NYAG would still be entitled to documents pre-dating the three-year period to the extent that such documents are relevant to NYAG's actionable claims.

PHEAA has serviced federal student loans and administered repayment and forgiveness programs since 2009. *See* Complaint at ¶ 34 (Docket No. 1). PHEAA's misconduct in administering these programs occurred over a multi-year period. Borrowers seeking forgiveness under PSLF have an ongoing relationship with PHEAA and regularly interact with PHEAA over a ten-year period. The requested documents include borrower complaints related to NYAG's claims and related documents (Request No. 8)[2] and PHEAA's communications and interactions with borrowers related to NYAG's claims (Request Nos. 17 – 42).[3] Records of PHEAA's communications and interactions with borrowers during the course of their relationship are relevant in order to determine, *inter alia*, PHEEA's ongoing practices and any changes to those practices, the reasons for PHEAA's performance deficiencies; PHEAA's accuracy in tracking

[2] Request No. 8 seeks: "All Communications Concerning written or oral complaints made by or on behalf of Borrowers Concerning PSLF, IDR Plans, the transfer of Borrower records to PHEAA, assistance to distressed Borrowers (including the use of forbearance), loan consolidation (except complaints solely about the need to consolidate from FFEL loans to Direct loans to be eligible for PSLF), or the Cancer Deferment, including the complaints themselves. This Request includes all complaints Concerning these topics made to PHEAA as well as all complaints Concerning these topics made to third parties, including other government agencies, and all Communications Concerning these complaints."

[3] Request No. 17 seeks: "All Communications with Borrowers Concerning PSLF, including Initial Payment Counts, and any other counts of Qualifying Payments, Detailed Payment Trackers, and Communications Concerning a Borrower's eligibility for PSLF (including Communications Concerning those Communications.)." For Request Nos. 18 - 42, *see* Exhibit A, attached.

borrower payments; whether borrowers' current qualifying payment counts are correct; and whether PHEAA's more recent decisions concerning PSLF qualifying payments counts and concerning PSLF applications are accurate. Accordingly, the documents requested in the RFP that encompass communications and interactions with borrowers related to NYAG's claims, and PHEAA's internal communications about these interactions, are relevant for the Disputed Period and are proportional to the needs of this case.

In addition, PHEAA's internal and external communications regarding PHEAA's administration of the PSLF and income-driven repayment programs over the course of PHEAA's relationship with the affected borrowers are relevant to determining the scope and effects of PHEAA's actionable misconduct. Accordingly, NYAG's request for production of documents related to relevant internal manuals and training materials[4] (Request No. 7);[5] relevant audits, quality control measures, and limitations or errors in PHEAA's servicing systems (Request Nos.

[4] PHEAA has produced certain documents, including policies, training materials, and contract provisions that were created during the Disputed Period but remained effective after August 26, 2016. However, NYAG is entitled to the remaining requested documents created during the Disputed Period, including policies and training materials that did not remain in effect after August 26, 2016, because such materials are relevant to a determination of whether PHEAA's decisions about total qualifying payment counts and PSLF eligibility are accurate.

[5] Request No. 7 seeks: "All manuals, handbooks, scripts, templates, other reference materials, and training materials or similar Communications Concerning PSLF, IDR Plans, the transfer of Federal Student Loan borrower records to PHEAA, assistance to distressed Federal Student Loan borrowers (including the use of forbearance), loan consolidation, or the Cancer Deferment."

3, 9 -11);[6] related actions or investigations brought against PHEAA (Request Nos. 12, 45);[7] communications with the Department of Education and other servicers concerning PSLF, Income-Driven Repayment, and other relevant topics (Request Nos. 14 – 16)[8] and borrower

---

[6] Request No. 3 seeks: "Documents sufficient to Identify any PHEAA personnel involved in quality-assurance activities Concerning PHEAA's servicing of Federal Student Loans and the dates of employment of such personnel, including organizational charts.
Request No. 9 seeks: "All Communications, including the underlying Communications, Concerning internal or external audits, reviews, evaluations, vendor reviews, performance reports, corrective action plans, or similar Communications, Concerning the following topics: PSLF, IDR Plans, the transfer of Federal Student Loan borrowers records to PHEAA, assistance to distressed Federal Student Loan borrowers (including the use of forbearance), loan consolidation, or the Cancer Deferment."
Request No. 10 seeks: "All Communications Concerning any limitations, errors, need for upgrades, need for user training, problems, deficiency in quality control, or lack of capacity of COMPASS/Hera or any other system used to track and/or calculate Qualifying Payments or calculate IDR Plan payments."
Request No. 11 seeks: "All Communications Concerning any PHEAA quality control or assurance methods (or lack thereof) used in connection with PSLF, Initial Payment Counts or any subsequent counts of Qualifying Payments, Detailed Payment Trackers, transfer of Federal Student Loan borrower records to PHEAA, any aspect of IDR Plans, assistance to distressed Federal Student Loan borrowers (including the use of forbearance), loan consolidation, or the Cancer Deferment."

[7] Request No. 12 seeks: "All Communications Concerning any lawsuit, arbitration, or mediation brought against PHEAA, the Department of Education, the Consumer Financial Protection Bureau, or any other federal agency Concerning PSLF, IDR Plans, assistance to distressed Federal Student Loan borrowers (including the use of forbearance), loan consolidation, or the Cancer Deference, including all filings in lawsuits which are not publicly available." Request No. 45 seeks: "All Documents concerning any investigation of PHEAA by any government entity relating to the servicing of Federal Student Loans, including all subpoenas and requests for information and all Documents produced to any federal government agency or other State Attorney General."

[8] Request No. 14 seeks: "All Communications with the Department of Education Concerning PSLF, IDR Plans, the transfer of Federal Student Loan borrowers to PHEAA, assistance to distressed Federal Student Loan borrowers (including forbearance), loan consolidation (except to the extent that they Concern solely the need to consolidate from FFEL loans to Direct loans in order to be eligible for PSLF) or the Cancer Deferment (including Communications Concerning those Communications.)."
Request No. 15 seeks: "All Communications concerning quality-assurance-related meetings with the Department of Education, such as the one that took place on November 21, 2019."
Request No. 16 seeks: "All Communications with any other federal loan servicer Concerning PSLF, IDR Plans, or the Cancer Deferment, including Communications Concerning particular

repayment data related to NYAG's claims (Request Nos. 4, 46[9])[10] are relevant even if created prior to the actionable period. *See, e.g.*, *Favors v. Cuomo*, 2013 WL 12358269, at *4 (E.D.N.Y. Aug. 27, 2013). Accordingly, regardless of the applicable statute of limitations, NYAG is entitled to production of the documents requested in the RFP for the Disputed Period.

### B. C.P.L.R. § 213(9)'s Six-Year Statute of Limitations Applies Retroactively to NYAG's Executive Law § 63(12) Claims

NYAG is entitled to production of documents created during the period of October 3, 2013 through August 26, 2016 because that period coincides with the applicable six-year statute of limitations for NYAG's Exec. Law § 63(12) claims. Pursuant to C.P.L.R. § 213(9), NYAG's Exec. Law § 63(12) claims are subject to a six-year statute of limitations. C.P.L.R. § 213(9) went into effect in August 2019, prior to the filing of NYAG's Complaint, and applies retroactively to NYAG's claims. *Allen,* 2021 WL 394821, at *5.

C.P.LR. § 213(9) was enacted by the legislature to "correct" the Court of Appeal's decision in *People v. Credit Suisse Sec. (USA) LLC*, 31 N.Y.3d 622, 634 (2018), which overturned long-standing precedent to hold that the statute of limitations for fraud claims

---

Borrowers and their records (including Communications Concerning those Communications.).

[9] Request No. 4 seeks: "Documents sufficient to show, on a yearly basis, the number of Borrowers (a) whose Direct loans were serviced by PHEAA, and (b) whose FFEL loans were serviced by PHEAA (for any Person). The documents should distinguish among borrowers serviced under the names of PHEAA, AES, and FedLoan Servicing.

Request No. 46 seeks: "All databases Concerning the servicing of Borrower loans and Communications with Borrowers, including COMPASS/HERA and any customer relationship management or other databases that store records of Borrower payments, IDR Plans, PSLF payments and eligibility, onboarding of loans, Communications with Borrowers or Communications Concerning those Communications."

[10] PHEAA has produced relevant borrower data for the Disputed Period with respect to New York borrowers serviced after August 26, 2016. However, NYAG is also entitled to repayment data for borrowers that paid off loans prior to August 26, 2016. This data is relevant to determining the scope of servicing errors and PHEAA's awareness of problems continuing into the Disputed Period.

cognizable solely under Exec. Law § 63(12) was three years.[11] Sponsor's Mem., L 2019, ch 184, https://nysenate.gov/legislation/bills/2019/s6536. Prior to *Credit Suisse*, decades of case law recognized a six-year statute of limitations for Exec. Law § 63(12) claims. *See, e.g., State v. Cortelle,* 38 N.Y.2d 83, 89 (1975); *People v. Trump Entrepreneur Initiative, LLC,* 26 N.Y.S.3d 66, 73 (1st Dep't 2016); *Morelli v. Weider Nutrition Group, Inc.*, 712 N.Y.S.2d 551, 553 (1st Dep't 2000); *State v. County Bank of Rehoboth Beach*, 846 N.Y.S.2d 436, 439 (3d Dep't 2007).[12] C.P.L.R. § 213(9) passed the legislature on June 21, 2019 and went into effect upon signature by the Governor on August 26, 2019.

A recent Commercial Division case, *People v. Allen*, confirms that C.P.L.R. § 213(9)'s six-year statute of limitations applies retroactively to accrued claims. 2021 WL 394821, at *5. In *Allen*, the court held that C.P.L.R. § 213(9)'s six-year statute of limitations applied retroactivity to claims that, like NYAG's claims against PHEAA, accrued prior to the statute's enactment.

The *Allen* court's analysis was grounded on the Court of Appeal's decision in *Matter of Gleason v. Michael Vee, Ltd.*, 96 N.Y.2d 117 (2001). In *Gleason*, the court considered whether an amendment to the C.P.L.R. applied retroactively to court proceedings filed prior to the enactment of the amendment. The court held that the amendment applied retroactively to such

---

[11] The *Credit Suisse* court's analysis distinguished between common law fraud and fraud cognizable solely under Exec. Law § 63(12). 31 N.Y.3d at 634. The court held that because fraud cognizable solely under § 63(12) includes "broader liability than condemned at common law," such claims were governed by C.P.L.R. § 214(2), which provides for a three-year statute of limitations for actions to recover upon a liability created by statute, rather than C.P.L.R. § 213(1), which governs any "action for which no limitation is specifically prescribed by law." *Id.* at 633.

[12] In holding that the applicable statute of limitations under Exec. Law § 63(12) was six years, the *Trump* court noted one appellate outlier that had held a three-year statute of limitations applied to fraud cognizable solely under Exec. Law § 63(12). *See* 26 N.Y.S.3d at 73 (*citing State v. Daicel Chemical Indust.*, 42 A.D.3d 301 (1st Dep't 2008)).

proceedings because the C.P.L.R. amendment was "remedial" legislation aimed at correcting a judicial misinterpretation, and as such, the amendment "should be given retroactive effect in order to effectuate its beneficial purpose." *Id.* at 122. The court explained that "[o]ther factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." *Id.* (*citing Brothers v. Florence*, 95 N.Y.2d 290, 299 (2000); *Matter of OnBank & Trust Co.,* 90 N.Y.2d 730 (1997)).

The *Gleason* court concluded that although the amendment's text did not explicitly state that the amendment was to have retroactive effect, the legislature had "conveyed a sense of immediacy" by "acting swiftly" after the judicial decision and by directing that the amendment "take effect immediately." *Id*. at 122. The court also noted that the legislative history of the statute established that the "purpose of the amendment was to clarify what the law was always meant to do and say." *Id.* The court concluded that these factors together indicated that the amendment should be given retroactive application. *Id.* at 123.

The *Allen* court applied the *Gleason* factors and concluded that C.P.L.R. § 213(9) applies to claims that accrued prior to the enactment of the provision. The *Allen* court explained that C.P.L.R. § 213(9) is "remedial" legislation that was enacted in direct response to the judicial decision in *Credit Suisse*. 2021 WL 394821, at *9. The court noted that the legislature demonstrated immediacy by "act[ing] swiftly" to enact C.P.L.R. § 213(9) following the *Credit Suisse* decision and directing that it take effect immediately. *Id.* The *Allen* court noted that amendment was enacted to clarify "what the law was always meant to do and say," *Id*. This is further evidenced by the statements in the Sponsors Memorandum indicating that C.P.L.R. §

213(9) was enacted to "correct[]" the *Credit Suisse* decision and to "[c]larify[] that the statute of limitations for claims under the … Executive Law is six years." Sponsor's Mem., L 2019, ch 184, https://nysenate.gov/legislation/bills/2019/s6536.

*Matter of Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332 (2020), cited by PHEAA in PHEAA's letter to the Court dated February 19, 2021 (Docket No. 77), is inapplicable. *Regina* addresses the retroactivity of a statute that did not merely extend a statute of limitations period, but rather, "substantially altered the nature of the liability." *Id.* at 372. In *Regina*, the court considered changes to a regulatory scheme governing owners' liability for rent overcharges in apartments subject to the Rent Stabilization Law ("RSL"). Prior to the amendment, the regulatory scheme included a four-year statute of limitations for overcharge claims; a "lookback" rule that limited reviewable records to a four-year period; and a record-retention provision which directed that owners would not be required to maintain records for more than four years. *Id.* at 353. These elements together "formed an integrated scheme for calculating overcharges." *Id.* The amendments at issue in *Regina* extended the statute of limitations to six years, eliminated the lookback rule, and removed all temporal limitations on certain types of evidence that could be considered in overcharge investigations. *Id*. at 363-64. These changes "substantially altered" owners' liability, by, *inter alia*, creating the risk that owners could be penalized for having destroyed records, even though destruction of such records was permitted under the prior regulatory scheme. While the court applied a "heightened standard" to its analysis of the retroactivity of the regulatory scheme governing rent overcharges in *Regina*, the court's standard is inapplicable here, where the provision restores a previously-existing period of liability, but does not "substantially alter" the nature of liability nor create liability for previously legal conduct.

The court in *Regina* ultimately found that the legislature intended the new regulatory scheme to apply retroactively, but found that retroactive application of the new regulatory scheme would violate due process because it would "penalize[] [owners] indirectly for a disposal of records that was legal under the prior law but will now hinder the owner's ability to establish the legality of . . . rent increases outside the lookback period." *Regina*, 35 N.Y.3d at 368-69. Retroactive application of C.P.L.R. § 213(9) does not raise any similar concerns. C.P.L.R. § 213(9) does not create liability for conduct that was legal at the time it was carried out. The fraudulent conduct alleged in NYAG's Complaint was illegal both before, and after, the enactment of C.P.L.R. § 213(9). In addition, there is no question of PHEAA having disposed of documents from the Disputed Period. Indeed, as a federal contractor, PHEAA is required to retain records for a period of three years after receiving the last payment from the Department of Education.[13]

Moreover, retroactive application of C.P.L.R. § 213(9) here does not revive an extinguished claim, but rather, extends the period of PHEAA's liability for a timely Exec. Law § 63(12) claim. There is no dispute that, regardless of whether a three-year or a six-year statute of limitations applies to NYAG's Exec Law § 63(12) claims, NYAG has alleged a timely Exec. Law § 63(12) claim against PHEAA. Accordingly, application of C.P.L.R. § 213(9) here will not revive an otherwise extinguished claim, but rather, merely increases the time period for which PHEAA may be held liable for its misconduct and expands NYAG's ability to seek relief on behalf of more harmed borrowers.

---

[13] *See* Federal Acquisitions Regulations System, Subpart 4.703(a)(1), https://www.acquisition.gov/far/part-4#FAR_Subpart_4_7.

Even if application of C.P.L.R. § 213(9) did revive claims, a statute reviving claims satisfies the Due Process Clause of the New York State Constitution where, as here, the statute was enacted as a "reasonable response" "to remedy an injustice." *Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig*., 30 N.Y.3d 377, 400 (2017). Here, C.P.L.R. § 213(9) was enacted in response to *Credit Suisse*'s decision imposing a three-year statute of limitations on Exec. Law § 63(12) claims. The Sponsor's Memorandum explains that a three-year statute of limitations "jeopardizes the state's ability … to protect investors and consumers, prevent bad practices, and hold companies accountable for fraud and illegal conduct. It also impairs [NYAG's] ability to recover relief for consumers harmed by such conduct." Sponsor's Mem., L 2019, ch 184, https://nysenate.gov/legislation/bills/2019/s6536. The amendment restoring the limitations period to six years is a "reasonable" response to these injustices because it simply restores the status quo by reinstating a limitations period that was broadly recognized prior to *Credit Suisse*.

### C. NYAG is Also Entitled to Relevant Documents Created During the Disputed Period Pursuant to the "Continuing Violation" Doctrine

NYAG is entitled to relevant documents created during the Disputed Period because even if NYAG's Exec. Law § 63(12) claims were subject to a three-year statute of limitations, PHEAA would be liable for its conduct during the Disputed Period pursuant to the "continuing violation" doctrine. A "continuing violation" occurs where there is "a series of independent, distinct wrongs" rather than "a single wrong that has continuing effects." *Fort IV Group, L.P. v. 624 W. 172nd St. LLC*, No. 151959/2012, 2013 WL 4035349, at *4 (Sup. Ct. N.Y. Cnty. Aug. 6, 2013). A continuing violation "serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Selkirk v. State*, 249 A.D.2d 818, 819 (3d Dep't 1998); *see also Harvey v. Metro. Life Ins. Co.*, 21 Misc. 3d 1142(A) (Sup. Ct. N.Y. Cnty. 2005), *aff'd*,

34 A.D.3d 364 (1st Dep't 2006). Where there is a continuing violation, NYAG claims for statutory violations are timely as long as the latest conduct giving rise to the claim occurred within the applicable limitations period. *See People v. Trump*, 88 N.Y.S.3d 830, 837-38 (Sup. Ct. N.Y. Cnty. 2018) (denying a motion to dismiss the NYAG's claim under the Not-For-Profit Corporation Law on timeliness grounds because the NYAG alleged a continuing violation lasting into the limitations period).

While the doctrine has continuing-violation doctrine been applied most often in the context of employment discrimination, it has also been applied "both by the Second Circuit and courts in other jurisdictions, to a variety of non-Title VII claims." *Remigio v. Kelly,* No. 04 CIV 1877, 2005 WL 1950138, at *7 (S.D.N.Y. Aug. 12, 2005). While applied sparingly, the doctrine is invoked where there are "compelling circumstances" and where there are alleged "specific ongoing [illegal] policies or practices, [and] … specific and related instances of [misconduct that] are permitted by the [defendants] to continued unremedied for so long as to amount to an [illegal] policy or practice." *Id.* at *11 (citations omitted).

Here, PHEAA committed a series of independent wrongs that continued unremedied over the entire period that PHEAA administered the PSLF and Income-Driven Repayment programs, including repeatedly: (a) providing borrowers with false PSLF-qualifying payment counts; (b) providing borrowers with incorrect monthly loan payment amounts; (c) misrepresenting repayment options available to struggling borrowers; (d) misrepresenting the benefits of loan consolidation; (e) misinforming borrowers as to their opportunities to seek exceptions to certain PHEAA polices and to seek reversals of certain PHEAA determinations; and (f) falsely holding itself out as a reliable source of information and assistance to borrowers. *See* NYAG Complaint, Docket No. 1, at paragraphs 76 – 315. These systemic, widespread nature of the misconduct,

which affected tens of thousands of borrowers, constitutes a "compelling circumstance" warranting application of the doctrine. The recurring, continuing violations of Exec. Law § 63(12) occurred every time PHEAA made a misrepresentation to a borrower about the borrower's qualifying payment count, loan repayment amount, or options for seeking reversals of PHEAA determinations. The continuing nature of PHEAA's violations tolled the statute of limitations until "the last wrongful act" committed. *Selkirk*, 249 A.D.2d at 819. Accordingly, even assuming that a three-year statute of limitations is applicable to NYAG's Exec. Law § 63(12) claims, the continuing nature of PHEAA's violations tolled the statute of limitations of these claims, enabling NYAG to seek relief for conduct that occurred within the Disputed Period.

## IV. CONCLUSION

As set forth above, NYAG is entitled to production of the documents requested in the RFP for the Disputed Period, regardless of the applicable statute of limitations, because these documents are relevant to NYAG's claims concerning PHEAA's ongoing misconduct. Moreover, NYAG is entitled to production of documents created during the Disputed Period because, as set forth above, NYAG's Exec. Law § 63(12) claims are subject to a six-year statute of limitations pursuant to C.P.L.R. § 213(9). Finally, NYAG is entitled to the documents created during the Disputed Period because PHEAA's continued wrongs tolled the statute of limitations pursuant to the "continuing violation" doctrine. Accordingly, NYAG respectfully requests that the Court grant its motion and compel PHEAA to produce the requested documents created in the period of October 3, 2013 through August 26, 2016.

Dated: March 25, 2021

LETITIA JAMES
Attorney General of the State of New York
28 Liberty St.
New York, NY 10005

By: <u>/s/ *Carolyn M. Fast*</u>
Carolyn M. Fast
Assistant Attorney General
Hailey DeKraker
Assistant Attorney General
Bureau of Consumer Frauds & Protection
28 Liberty St.
New York, NY 10025
(212) 416-6250 (Fast)
(212) 416-6315 (DeKraker)

JANE M. AZIA
Bureau Chief

LAURA J. LEVINE
Deputy Bureau Chief

*of Counsel*