UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW
YORK, *by Letitia James, Attorney
General of the State of New York*,

                Plaintiff,

– against –

PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE AGENCY,
*d/b/a* FEDLOAN SERVICING *and*
AMERICAN EDUCATION SERVICES,

                Defendant.

**OPINION & ORDER**

19 Civ. 9155 (ER)

Ramos, D.J.:

    This case concerns the administration of the student loans serviced by the Pennsylvania Higher Education Assistance Agency ("PHEAA"). According to the New York Attorney General ("NYAG"), who brings this suit, PHEAA, the exclusive servicer of loans in the Public Service Loan Forgiveness Program, engages in unfair, deceptive, and abusive practices in violation of 12 U.S.C. § 5531 (Dodd-Frank), fraud and repeated and persistent illegal conduct in violation of New York's Executive Law § 63(12), and deceptive acts and practices in violation of New York's General Business Law § 349.[1]

    The NYAG moves to compel PHEAA to produce documents created during the period of October 3, 2013 through August 26, 2016 that are responsive to the NYAG's First Amended Request for Production of Documents and Electronically Stored Information dated June 23, 2020 (the "document requests").[2]

    For the reasons set forth below, the NYAG's motion to compel is GRANTED.

---

[1] Unless otherwise noted, citations to "¶ _" refer to the Complaint, Doc. 1.

[2] The document requests are attached to the NYAG's motion to compel. *See* Doc. 81-1.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.  Factual Background

The facts underlying this case are described in detail in the Court's May 1, 2020 opinion granting in part and denying in part PHEAA's motion to dismiss (the "May 1 Opinion"), familiarity with which is assumed. *See* Doc. 58.  For present purposes, the Court provides an abbreviated summary.

PHEAA is a large student loan servicer, which services approximately 20 percent of the nation's student debt, including the loans of tens of thousands of New York residents.  ¶¶ 32, 35.  The NYAG's claims focus on two programs that PHEAA administers, the Public Service Loan Forgiveness Program ("PSLF") and income-driven repayment ("IDR") plans.  The aim of PSLF is to encourage students to work in public service jobs, which are frequently low-paying, by offering loan forgiveness to those who make 120 monthly payments, while working fulltime for a qualifying public service employer.  ¶¶ 62–64.  IDR plans lower monthly payments based on income and household size, and allow for loan forgiveness if the borrower makes payments for a specified period, typically twenty or twenty-five years.  ¶¶ 17, 53, 201 n.24.

The Complaint asserts that PHEAA, in its administration of the loans it services, (1) provides borrowers with incorrect information about their loans, leading to undercounting of the number of PSLF-qualifying payments a borrower has made and delays in loan forgiveness; (2) delays in providing borrowers with information and processing paperwork, further delaying forgiveness; (3) provides borrowers with inaccurate information when contacted for assistance, further reducing the likelihood of forgiveness; and (4) attempts to steer struggling borrowers into forbearance or consolidation, which are economically beneficial to PHEAA, as opposed to IDR plans that can offer lower monthly payments.  *See* May 1 Opinion at 4–7.

### B. Procedural Background

The Complaint was filed on October 3, 2019. Doc. 1. On January 31, 2020, PHEAA moved to dismiss the Complaint. Doc. 40. In its May 1 Opinion, the Court granted PHEAA's motion to dismiss with respect to the NYAG's claims that PHEAA "steer[ed] borrowers into less-favorable repayment options such as forbearance," and denied the remainder of PHEAA's motion. May 1 Opinion at 36–37. On May 15, 2020, PHEAA filed its answer, Doc. 62, and amended its answer on June 12. Doc. 66.

On June 23, 2020, the NYAG served PHEAA with the document requests, which enumerate 46 categories of documents from the period of January 1, 2013 through the present. Doc. 81-1. The NYAG asserts that with the limited exception of certain documents and data, PHEAA has not produced documents responsive to the document requests that were created during the period of October 3, 2013 through August 26, 2016. PHEAA bases its refusal to produce such documents on its view that the relevant statute of limitations on the NYAG's claims, and in particular, its claims pursuant to New York's Executive Law § 63(12), is three years. Thus, documents prior to October 3, 2016, three years prior to the filing of the Complaint, are not subject to discovery. Although the parties have met and conferred, they have not been able to reach an agreement.

On February 12, 2021, the NYAG requested a pre-motion conference to discuss its anticipated motion to compel production of the aforementioned documents. Doc. 73.[3] A pre-motion conference was held on March 4, and the Court granted the NYAG leave to file its motion.

On March 25, the NYAG moved pursuant to Federal Rule of Civil Procedure 37 to compel PHEAA to produce documents created during the period of October 3, 2013

---

[3] In its February 12, 2021 letter, the NYAG explains that PHEAA has allegedly taken the position that documents created prior to August 26, 2016 are not discoverable. While the NYAG maintains that relevant documents for the full period of January 1, 2013 through the present are discoverable, it seeks documents only for the period of October 3, 2013 through August 26, 2016.

through August 26, 2016 (the "disputed period") that are responsive to the document requests.  Doc. 80.[4]

During the course of discovery, in response to approximately 20 of the 46 document requests, PHEAA has produced approximately 13,000 responsive documents consisting of over 200,000 pages that were created in or relate to the period of August 26, 2016 to the present.  Doc. 83-1 at 2.  In addition, with respect to the NYAG's requests for "all communications," PHEAA contends that it has begun reviewing between 150,000 and 250,000 documents dating between August 26, 2016 and the present for 31 different custodians.  *Id.*  In response, the NYAG asserts that it has agreed, for example, to limit email searches to particular search terms and custodians and to limit requests for communications with borrowers to certain subsets of borrowers, as opposed to all affected borrowers, which has allegedly significantly lowered the number of documents to be reviewed as claimed by PHEAA.  Doc. 84 at 7.  The parties do not dispute that PHEAA has produced certain documents and data created during the disputed period, including policies and procedures, contractual documents, and borrower data.  Doc. 83 at 11 & n.5; Doc. 84 at 7 n.3.

## II. LEGAL STANDARD

Federal district courts have broad discretion in deciding motions to compel.  *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).  The scope of discovery is generally limited to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The information sought need not be admissible

---

[4] The NYAG notes that it excludes from its motion to compel documents related to the deferment option for borrowers suffering from cancer.

4

at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

"The party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888 (SAS) (DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).

## III. DISCUSSION

### A. Statute of Limitations for Executive Law § 63(12)

The NYAG argues that it is entitled to the production of documents created during the disputed period, because this period of time coincides with the six-year statute of limitations that applies to its Executive Law § 63(12) claims pursuant to C.P.L.R. § 213(9).[5]

The NYAG provides by way of background that in 2018, the New York Court of Appeals overturned long-standing precedent to hold that the statute of limitations for fraud claims arising solely under § 63(12) was three years rather than six years. *People by Schneiderman v. Credit Suisse Sec. (USA) LLC*, 107 N.E.3d 515, 521 (N.Y. 2018). In response to that opinion, on June 21, 2019, the New York Legislature passed C.P.L.R. § 213(9), which went into effect on August 26, 2019. Pursuant to C.P.L.R. § 213(9), actions brought by the Attorney General under Executive Law § 63(12) have a six-year statute of limitations.

---

[5] The parties dispute whether the NYAG is nonetheless entitled to relevant documents created on or after October 3, 2013 pursuant to the "continuing violation" doctrine, even if the NYAG's Executive Law § 63(12) claims are subject to a three-year statute of limitations. Because the Court holds that the applicable statute of limitations is six years, it need not resolve this issue.

The NYAG relies on the holding in *People v. Allen* to assert that the six-year statute of limitations under C.P.L.R. § 213(9) applies retroactively to claims that accrued prior to its enactment. No. 452378/2019, 2021 WL 394821, at *5 (N.Y. Sup. Ct. Feb. 4, 2021). In opposition, PHEAA argues that *Allen* was wrongly decided, because it cannot be reconciled with *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972 (N.Y. 2020). In *Regina*, the Court of Appeals analyzed whether amendments to New York's Rent Stabilization Law, including an extension of the statute of limitations from four years to six years for claims concerning owners' liability for rent overcharges, should apply retroactively. The Court of Appeals held that "absent an unambiguous statement of legislative intent, statutes that revive time-barred claims if applied retroactively will not be construed to have that effect," and concluded that the statute's text was "insufficient to indicate that the Legislature intended retroactive application in a manner that revives time-barred claims, such as by extending the statute of limitations." *Regina Metro. Co., LLC*, 154 N.E.3d at 992–93. Here, PHEAA asserts that because the text of C.P.L.R. § 213(9) does not "unequivocally" revive claims that had expired as of August 26, 2019—i.e., claims predating August 26, 2016—the statute does not apply retroactively under the "heightened claim revival standard" in *Regina*. The NYAG contends that *Regina* is inapplicable and readily distinguishable.

The Court examines the holding in *Allen*. In finding that the six-year statute of limitations in C.P.L.R. § 213(9) applied retroactively to capture conduct before its enactment, the Supreme Court of New York in *Allen* relied on the Court of Appeals' holding in *In re Gleason (Michael Vee, Ltd.)*, 749 N.E.2d 724, 726 (N.Y. 2001). Specifically, the court noted that "[w]here an amendment to the law is 'remedial legislation' it 'should be given retroactive effect in order to effectuate its beneficial purpose.'" *Allen*, 2021 WL 394821, at *5 (quoting *Gleason*, 749 N.E.2d at 726). As the Court of Appeals held in *Gleason*, "where the Legislature 'conveyed a sense of immediacy' because it 'acted swiftly' after a Court of Appeals decision and 'directed that

6

the amendment was to take effect immediately' and 'the purpose of the amendment was to clarify what the law was always meant to do and say,' the legislation should be applied retroactively." *Id.* (quoting *Gleason*, 749 N.E.2d at 726–27).

The court in *Allen* applied these factors in the retroactivity analysis from *Gleason* to C.P.L.R. § 213(9). *Id.*  First, it noted that after the Court of Appeals decided *Credit Suisse* on June 12, 2018, the New York Legislature acted swiftly in passing C.P.L.R. § 213(9) on June 21, 2019 and directing that it take effect immediately. *Id.*; *see also Gleason*, 749 N.E.2d at 726 (involving a C.P.L.R. amendment that was enacted a little over two years after the Court of Appeals decision and that took immediate effect). Second, as in *Gleason*, the legislative history establishes that the purpose of the amendment was to clarify what the law was always meant to do and say. *Gleason*, 749 N.E.2d at 725–27 (examining the Sponsor's Memorandum for the C.P.L.R. amendment, which noted the original purpose of the statute and acknowledged the Court of Appeals decision). As the NYAG notes, the Sponsor's Memorandum indicates that C.P.L.R. § 213(9) was enacted to "correct[ ]" a recent Court of Appeals decision, which overturned precedent when it found that the statute of limitations should be reduced to three years instead of six, and to "[c]larify[ ]" that the statute of limitations for claims under the Executive Law is six years.  NY LEGIS 184 (2019), 2019 Sess. Law News of N.Y. Ch. 184 (S. 6536) (McKINNEY'S).  Thus, the Court agrees with the holdings in *Allen* and *Gleason* that "[t]hese factors together persuade us that the remedial purpose of the amendment should be effectuated through retroactive application." *Gleason*, 749 N.E.2d at 727.

Moreover, on October 21, 2021, the Supreme Court of New York, Appellate Division, First Department, affirmed the decision in *Allen*.[6] The First Department held that the six-year statute of limitations pursuant to C.P.L.R. § 213(9) applied retroactively

---

[6] The NYAG submitted a notice of supplemental authority on October 27, 2021 regarding this decision, which was decided subsequent to the parties' briefing.  Doc. 92.  PHEAA did not file a response.

7

to the Martin Act claims at issue in that case. *People by James v. Allen*, 156 N.Y.S.3d 171, 173 (N.Y. App. Div. 2021). In response to the defendants' contention that C.P.L.R. § 213(9) should not be applied retroactively, the First Department opined that this argument "ignores the fact that this court applied a six-year statute of limitations to Martin Act claims during the period of defendants' offending conduct," and noted that the New York Legislature swiftly reacted to the June 12, 2018 decision in *Credit Suisse* by passing C.P.L.R. § 213(9). *Id.* (citing *Gleason*, 749 N.E.2d 724). Furthermore, similar to PHEAA, the defendants in *Allen* primarily relied on *Regina* in support of their argument that the court should not have applied a six-year statute of limitations. *Id.*[7] The First Department held that unlike in *Regina*, "where landlords acted in reliance on a four-year statute of limitations, defendants cannot have acted in reliance on a three-year statute of limitations except for the brief period between June 12, 2018 and August 26, 2019, and that period would not be time-barred even if a three-year statute applied." *Id.* at 174. Similarly, PHEAA could not have relied on a statute-of-limitations period of three years with the exception of the time between June 12, 2018, the date of the *Credit Suisse* decision, and August 26, 2019, the date § 213(9) went into effect. Because the NYAG commenced the instant action on October 3, 2019, the period of June 12, 2018 to August 26, 2019 would not be time-barred even if the statute of limitations was three years.[8]

Thus, the Court agrees with the NYAG that PHEAA's reliance on *Regina* is misplaced. Accordingly, the six-year statute of limitations pursuant to C.P.L.R. § 213(9) applies retroactively to the § 63(12) claims.

---

[7] In support of its argument that the decision in *Allen* was erroneously decided, PHEAA contends that "*Allen* did not address or even acknowledge *Matter of Regina* . . . (nor is it apparent that the *Allen* court was made aware of such authority)." Doc. 83 at 7. However, in affirming the decision in *Allen*, the First Department explicitly addressed and distinguished *Regina*.

[8] Because the Court finds that *Regina* is distinguishable on this point, it need not address the parties' other arguments regarding *Regina*'s applicability to C.P.L.R. § 213(9).

8

### B. Relevance and Proportionality to the Needs of the Case

#### i. Relevance

The NYAG argues that regardless of the applicable statute of limitations for its § 63(12) claims, it is entitled to the production of documents for the period on or after October 3, 2013 that are responsive to the document requests, because those documents are relevant to its claims.[9] As summarized by the NYAG, the categories of the documents requested include PHEAA's internal communications related to each of the NYAG's claims; PHEAA's communications with borrowers related to the NYAG's claims; borrower complaints related to the NYAG's claims; and PHEAA's audits and quality-assurance efforts related to the NYAG's claims. Accordingly, the NYAG contends that because these documents relate to the ongoing alleged misconduct by PHEAA and the interactions between PHEAA and borrowers that form the basis for its claims, they are relevant.

In opposition, PHEAA argues that the NYAG has failed to demonstrate that the document requests are relevant and proportional to the needs of the case, and that the applicable statute of limitations is three years.

As discussed above, the Court found that the applicable statute of limitations for the § 63(12) claims is six years. PHEAA argues that the document requests seek discovery that is not relevant based on a statute-of-limitations period of three years. In fact, PHEAA supports its argument that document requests for the disputed period are not relevant by asserting that discovery outside of the limitations period is generally not acceptable. For example, PHEAA contends that "[n]umerous federal courts have used the applicable limitations period as a reasonable cut-off point for discovery." Doc. 83 at 9–10. Furthermore, as set forth above, it has produced documents in response to the

---

[9] The parties dispute whether, regardless of whether the statute of limitations for the § 63(12) claims is three or six years, the NYAG would still be entitled to the documents, because they are relevant to its claims. Because the Court found that the applicable statute of limitations is six years, it need not address this issue.

9

document requests at issue for the period of August 26, 2016 to the present.  Moreover, PHEAA has produced certain documents, including policies, training materials, and contract provisions, that were created during the disputed period but remained effective after August 26, 2016.  In addition, PHEAA has produced borrower data for the disputed period with respect to New York borrowers serviced after August 26, 2016.

Indeed, the document requests fall squarely within the scope of discovery, and are directly relevant to the § 63(12) claims.  Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc.*, 437 U.S. at 351 (citing *Hickman*, 329 U.S. at 501).  According to the NYAG, PHEAA has serviced federal student loans and administered repayment and forgiveness programs since 2009.  The alleged misconduct occurred over a multi-year period.  The Complaint alleges that PHEAA "repeatedly engaged in [ ] fraudulent acts and practices in violation of Executive Law § 63(12) against borrowers [ ] in New York through its federal loan servicing practices related to PSLF, IDR, and deferments."  ¶ 350.  As noted by the NYAG, borrowers seeking forgiveness under PSLF have an ongoing relationship with PHEAA, and regularly interacted with PHEAA over a ten-year period.

Accordingly, the document requests seek, for example, borrower complaints concerning topics such as PSLF, IDR plans, and loan consolidation (Request No. 8); PHEAA's communications related to similar topics (Request Nos. 17–42); internal manuals and training materials related to similar topics (Request No. 7); audits, quality control measures, and limitations or errors in PHEAA's servicing systems related to similar topics (Request Nos. 3, 9–11); actions or investigations brought against PHEAA related to similar topics (Request Nos. 12, 45); PHEAA's communications with the Department of Education and other servicers concerning similar topics (Request Nos. 14–16); and borrower repayment data (Request Nos. 4, 46), all of which are relevant to the NYAG's claims.

### ii.     Proportionality to the Needs of the Case

Next, PHEAA argues that the NYAG's motion to compel production in response to the document requests for the disputed period should be denied, because the requests would be enormously burdensome for PHEAA, and are not proportional to the needs of the case.  First, as set forth above, PHEAA asserts that, in response to approximately 20 of the 46 document requests, it has produced approximately 13,000 responsive documents consisting of over 200,000 pages that were created in or relate to the period of August 26, 2016 to the present.  Doc. 83-1 at 2.  In the course of this production, PHEAA devoted hundreds of hours of employee time and expended hundreds of thousands of dollars.  *Id.*  Marc Bitsko, PHEAA's Vice President of Loan Operations, contends that identifying and producing the same categories of responsive information for the disputed period is "likely to require a similar effort in terms of production time, employee effort, and expense."  *Id.*  Second, for the document requests seeking "all communications," PHEAA has begun reviewing between 150,000 and 250,000 documents dating from August 26, 2016 through the present.  *Id.*  Mr. Bitsko expects that an email review for such communications during the disputed period will require PHEAA to review and potentially produce over 100,000 documents.  *Id.* at 2–3.  Mr. Bitsko predicts that this process will require no less than hundreds of thousands of dollars and additional months.  *Id.* at 3.

Third, for the document requests regarding PHEAA's communications and interactions with borrowers, including complaints, PHEAA has produced to the NYAG the servicing system data that will allow the NYAG to run its own searches to assess whether certain borrower accounts warrant manual review.  *Id.*  Mr. Bitsko explains that a PHEAA employee can review the file for a particular borrower to assess its relevance in approximately five to ten minutes and can compile that file for production in approximately six hours.  *Id.*  As of 2016, PHEAA serviced federal student loans for nearly 600,000 New York borrowers.  *Id.*  Depending on the number of files requiring

review, this process would likely require over 100,000 hours of employee time. *Id.* at 3–4.

In reply, the NYAG asserts that the document requests are proportional to the "serious, ongoing, and widespread nature of the allegations, which potentially affect thousands of New York borrowers over a period of many years." Doc. 84 at 7. Specifically, according to PHEAA, it serviced federal student loans for nearly 600,000 New York borrowers as of 2016, and its operations are and were extremely broad in scope. Moreover, as described above, the NYAG argues that PHEAA's allegations of undue burden do not acknowledge that the NYAG has agreed, for example, to limit email searches to particular search terms and custodians and to limit requests for communications with borrowers to certain subsets of borrowers, in order to address PHEAA's concerns. *Id.* These concessions have allegedly significantly lowered the number of documents to be reviewed by PHEAA. *Id.*

While the Court recognizes that the process of reviewing and producing responsive documents will likely require significant time and expense, PHEAA has not shown that the burden of responding outweighs any likely benefit. Fed. R. Civ. P. 26(b)(1). Taking into account the needs of the case and the importance of the proposed discovery in its resolution, the document requests reasonably bear on the NYAG's claims. *See Lindsey v. Butler*, No. 11 Civ. 9102 (ER), 2017 WL 4157362, at *5 (S.D.N.Y. Sept. 18, 2017) (citation omitted).

### IV.     CONCLUSION

For the reasons discussed above, the NYAG's motion to compel is GRANTED. Accordingly, the NYAG's request for oral argument is DENIED as moot.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 80.

It is SO ORDERED.

Dated:   March 30, 2022
        New York, New York

_____
Edgardo Ramos, U.S.D.J.