**EXECUTION COPY**

## SETTLEMENT AGREEMENT

## I.      PREAMBLE

Plaintiff, the People of the State of New York, by and through their Attorney General, Letitia James ("NYAG"), and Defendant, the Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing and American Education Services ("PHEAA") (individually, "Party"; collectively, the "Parties") enter into this Settlement Agreement ("Agreement") in order to resolve a lawsuit filed in the United States District Court for the Southern District of New York (hereinafter "Court") entitled *People of the State of New York v. Pennsylvania Higher Education Assistance Agency, d/b/a Fedloan Servicing and American Education Services*, Case No. 19-cv-9155 (ER) ("Lawsuit") without further proceedings or trial.

In entering into this Agreement, PHEAA waives all defenses in any proceeding to adjudicate compliance with, or for enforcement of, this Agreement, except the defense that PHEAA has performed the Agreement by its terms.

## II.     RECITALS

WHEREAS, on October 3, 2019, NYAG filed its Complaint against PHEAA, alleging that PHEAA committed unfair or deceptive acts or practices in violation of 12 U.S.C. § 5531(a), N.Y. Executive Law § 63(12), and N.Y. General Business Law, Article 22-A, § 349 relating to its private and federal student loan servicing practices including, without limitation, with respect to the Public Service Loan Forgiveness ("PSLF") program and Income Driven Repayment plans (Dkt. No. 1); and

WHEREAS, the Parties and their counsel have agreed to resolve and settle this Lawsuit according to the terms of this Agreement; and

WHEREAS, on October 6, 2021, the United States Department of Education (the "Department") announced that it is in the process of developing and implementing a temporary overhaul of the PSLF program ("PSLF Overhaul") that will simplify relief under the program for a large population of public servants with federal student loans; and

WHEREAS, PHEAA, as the PSLF program's exclusive third-party loan servicer, has worked closely with the Department on the PSLF Overhaul and will continue to follow all Department directives and guidance during the implementation of the PSLF Overhaul;

WHEREAS, the Parties believe, including in light of the PSLF Overhaul, that this Agreement is fair, reasonable, and adequate in its resolution of NYAG's claims; and

WHEREAS, PHEAA enters into this Agreement for settlement purposes only and neither admits nor denies allegations of wrongdoing or any liability for the claims asserted in the Complaint. PHEAA contends that it is a federal contractor and that, as such, it is solely an administrator of the PSLF program and does not have any discretion to act contrary to the laws passed by the United States Congress, the implementing regulations set forth by the Department, or the Department's directives. PHEAA contends that it was required to obtain the Department's approval to enter into this Agreement, and PHEAA has received permission from the Department

**EXECUTION COPY**

to undertake the obligations described herein. While PHEAA has contended that the laws of the State of New York do not apply to PHEAA's activities as a federal contractor, PHEAA acknowledges that this Court has subject matter jurisdiction and personal jurisdiction over it, and that venue is proper in this Court.

NOW THEREFORE, without (1) any admission or concession on the part of NYAG of the lack of merit of the Lawsuit whatsoever or (2) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by PHEAA, the Parties agree that, in reliance upon and subject to the representations, mutual promises, covenants, and obligations set forth in this Agreement, and for good and valuable consideration, the Lawsuit will be settled, compromised, and dismissed with prejudice upon the terms and conditions set forth below.

## III.    DEFINITIONS

A.    "**Borrower**" means a current New York resident with a Direct Loan or FFEL Loan that is being serviced by PHEAA as of the Effective Date or that was transferred by PHEAA to another servicer on or after December 1, 2021.

B.    "**Department pre-approved loan account correction**" means one or more types of non-monetary relief, which the Department has authorized PHEAA to implement for specified cohorts of borrowers including, without limitation, crediting missed months and overriding payments deemed as non-qualifying to change and record them as PSLF Qualifying Payments or IDR Payments.

C.    "**Direct Loan**" means a loan originated and guaranteed by the Department under 20 U.S.C. §§ 1087a–1087j.

D.    "**ECF**" means the PSLF Employer Certification Form issued by the Department until in or about November 2020.

E.    "**Effective Date**" means the date on which NYAG files a Stipulation of Dismissal as set forth in Section VII.A.

F.    "**FFEL Loan**" means a Federal Family Education Loan Program loan owned by the federal government.

G.    "**Forgiveness Application**" means the PSLF forgiveness application form issued by the Department until in or about November 2020.

H.    "**Income Driven Repayment Plan**" (or "**IDR Plan**") means a loan repayment plan for a federal student loan that sets the borrower's monthly student loan payment at an amount that is intended to be affordable based on the borrower's income and family size, including the Income-Contingent Repayment ("ICR") plan, the Income-Based Repayment ("IBR") plan, the Pay as You Earn Repayment plan ("PAYE"), and the Revised Pay as You Earn Repayment plan ("REPAYE").

I.    "**IDR Payment**" means a borrower payment made under an IDR Plan.

**EXECUTION COPY**

**J.**     "**PSLF**" means the Public Service Loan Forgiveness program authorized under 34 C.F.R. § 685.219 and "intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct [L]oans after they satisfy the public service and loan payment requirements" of that regulation. *Id.* § 685.219(a).

**K.**     "**PSLF Combined Form**" means the PSLF & Temporary Expanded PSLF (TEPSLF) Certification & Application issued by the Department beginning in or about November 2020.

**L.**     "**PSLF Qualifying Payment**" means a monthly payment made in accordance with the requirements of 34 C.F.R. § 685.219(c) or the Department's related guidance and counting towards the 120 qualifying payments required for loan forgiveness under 34 C.F.R. § 685.219(d).

**M.**     "**QP Tracker Delay**" means a circumstance in which a Borrower requested from PHEAA a detailed payment tracker, detailed payment count, or reasonably equivalent mechanism for tracking the Borrower's total PSLF Qualifying Payments and did not receive such detailed payment tracker, detailed payment count, or reasonably equivalent mechanism within six months of that request, excluding time during which PHEAA had sought and was awaiting necessary information from the Department or the Borrower's prior servicer.

**N.**     "**Servicer Error,**" which shall not include errors made by prior servicers or instances where PHEAA acted according to then-applicable federal regulations or guidance by the Department, means the following servicing conduct by PHEAA:

1.     Erroneously denying a Borrower's ECF, Forgiveness Application, or PSLF Combined Form;

2.     Erroneously advising a Borrower that the Borrower's employer did not qualify for purposes of PSLF;

3.     Erroneously applying any forbearance or deferment;

4.     Providing incorrect information to a Borrower about PSLF or IDR Plan eligibility, including failure to follow prespecified call hierarchies for the provision of information;

5.     Charging an inaccurate monthly payment amount;

6.     Processing a Borrower's IDR Plan application more than 30 business days after receipt without a valid intervening hold status, including, for clarity, circumstances in which the intervening hold status was indicated as valid but was not valid;

**EXECUTION COPY**

7.   Providing incorrect information to a Borrower, in response to an inquiry by the Borrower, about the Borrower's right to appeal, challenge, or request override of any PHEAA determination related to PSLF or IDR.

8.   Providing incorrect information to a Borrower about the benefits of loan consolidation and/or the effects of consolidation on PSLF eligibility; or

9.   Providing incorrect information to a Borrower about the availability of or eligibility for a cancer deferment.

## IV.   NOTICE AND CLAIMS PROCESS

### A.   Overview

1.   PHEAA shall implement a notice-and-claims process (the "Claims Process") for Borrowers to: (i) provide Borrowers an opportunity to obtain an account review, (ii) determine whether PHEAA made a Servicer Error, and (iii) obtain relief as provided under this Agreement in the event that a Servicer Error is identified.

2.   The Claims Process shall have two components: an automatic review process under which PHEAA reviews certain Borrower populations for specified Servicer Errors regardless of whether the Borrower submits a Claims Form (the "Automatic Review") and a requested review process under which PHEAA reviews the accounts of Borrowers who have submitted Claims Forms (the "Requested Review").

3.   PHEAA shall pay all costs of administration and implementation of the Claims Process.

### B.   Automatic Review

1.   **Automatic Review Population.** PHEAA shall conduct an Automatic Review of Borrower loan accounts (the "Automatic Review Population") for Borrowers meeting any of the following criteria:

(a)   Borrowers who submitted a complaint to NYAG between August 26, 2016 and the Effective Date concerning an IDR- or PSLF-related error by PHEAA. NYAG shall identify such Borrowers to PHEAA within 5 days after the Effective Date.

(b)   Borrowers who submitted an ECF or PSLF Combined Form that was denied by PHEAA on the basis of employer ineligibility and who did not subsequently submit an approved ECF or PSLF Combined Form covering the same time frame covered by the initial submission.

**EXECUTION COPY**

(c) Borrowers who had a Direct Loan or FFEL Loan in discretionary forbearance for 30 or more consecutive months, where any portion of that forbearance was applied by PHEAA.

(d) Borrowers who were not in repayment status for between 2 to 4 months due to administrative forbearance, deferment, or grace period, and have approved PSLF employment on file.

(e) Borrowers who had deferment or forbearance requests processed by a third-party vendor between June 13, 2019, when an internal audit identified a high error rate on that vendor's part, and August 1, 2019, when remedial measures were to be put in place.

2. **Scope and Timing of Automatic Review.**

(a) PHEAA shall complete its account review for the Automatic Review Population within 90 days of the Effective Date.

(b) For Paragraph IV(B)(1)(a), PHEAA shall review the Borrower's loan account to determine whether PHEAA made a Servicer Error or caused a QP Tracker Delay.

(c) For Paragraph IV(B)(1)(b), PHEAA shall review the Borrower's loan account to determine whether PHEAA erroneously denied the Borrower's ECF, Forgiveness Application, or PSLF Combined Form, or erroneously advised the Borrower that the Borrower's employer did not qualify for PSLF.

(d) For Paragraph IV(B)(1)(c), PHEAA shall review the Borrower's loan account to determine whether PHEAA erroneously approved a discretionary forbearance or provided incorrect information to the Borrower about discretionary forbearances or repayment plans, including IDR Plans.

(e) For Paragraphs IV(B)(1)(d) and (e), PHEAA shall review the Borrower's loan account to determine whether PHEAA or its third party vendor made a Servicer Error relating to forbearance or deferment.

(f) To determine whether there was a Servicer Error or QP Tracker Delay, PHEAA shall review all of the following, if in its possession and to the extent relevant to the scope of review, relating to the Borrower's loan account: payment history; ECFs and PSLF Combined Forms; loan type; telephone call notes; telephone call recordings; correspondence (mail, e-mail); processor or customer service representative performance reports; prior audits involving the Borrower's account; records of a prior servicer when necessary to determine accuracy of PSLF Qualifying Payment count; and any

**EXECUTION COPY**

other information/documentation PHEAA typically reviews to identify Servicer Errors.

**C.      Requested Review**

1.      **Requested Review Population.** The Requested Review population includes each Borrower who at any time submitted an ECF, PSLF Combined Form, or IDR Plan application, or was placed by PHEAA into a discretionary forbearance (the "Requested Review Population"). This includes Borrowers who will also receive an Automatic Review.

2.      **Scope and Timing of Notice and Requested Review.**

(a)      Beginning no later than 30 days after the Effective Date, PHEAA shall send a Notice and Claims Form (collectively, the "Notice"), substantially similar to the form attached hereto as Exhibit 1, to the Requested Review Population. The Notice shall be sent by PHEAA on a staggered schedule, with the last Notices sent on or before 90 days after the Effective Date, and shall be provided in accordance with the Borrower's expressed preferred communication channel, which may include, but not be limited to, electronic communications. To avoid any discrepancies between PSLF Qualifying Payment counts in the Notice and the Borrower's monthly invoice, PHEAA may elect to send the Notice on the same date as the Borrower's monthly invoice, as separate communications.

(b)      Borrowers in the Requested Review Population may obtain a Requested Review by submitting or mailing the Claims Form accompanying the Notice within 45 days after the date the Borrower receives the Notice. For Requested Reviews that are mailed, the Claims Form must be postmarked within 45 days after the date the Borrower receives the Notice. To obtain a Requested Review, Borrowers must check one or more of the subject-matter boxes on the Claims Form regarding the nature of their claim, which will include both Servicer Errors and QP Tracker Delays. Borrowers shall have the option to submit the Claims Form by mail or electronic upload to PHEAA.

(c)      For each Borrower who submits a Claims Form, PHEAA shall review the Borrower's loan account to determine whether PHEAA made a Servicer Error or QP Tracker Delay relating to the subject-matter box(es) checked by the Borrower on the Claims Form that would entitle the Borrower to relief.

(d)      To determine whether there was a Servicer Error or QP Tracker Delay, PHEAA shall review all of the following, if in its possession and to the extent relevant to the Borrower's request(s), relating to

**EXECUTION COPY**

the Borrower's loan account: payment history; ECFs and PSLF Combined Forms; loan type; telephone call notes; telephone call recordings; correspondence (mail, e-mail); processor or customer service representative performance reports; prior audits involving the Borrower's account; records of a prior servicer when necessary to determine accuracy of PSLF Qualifying Payment count; and any other information/documentation PHEAA typically reviews to identify Servicer Errors.

(e)     If necessary, PHEAA may request that the Borrower provide additional information to facilitate its review, such as income-related information to determine IDR Plan eligibility or employer-related documentation to determine PSLF eligibility.

(f)     PHEAA shall complete its Requested Review within 90 days of receipt of the Borrower's Claims Form.

**D.     Borrower Relief.**

1.     **Standard Relief:** The following provisions set forth the action(s) that PHEAA shall take following an Automatic or Requested Review if PHEAA determines that the Borrower is entitled to relief on the basis of a Servicer Error or QP Tracker Delay.

(a)     For Borrowers whose PSLF Qualifying Payment count and/or IDR Payment count is incorrect due to any Servicer Error, PHEAA shall credit the undercounted payments to the Borrower's account. If that credit results in the Borrower having in excess of 120 PSLF Qualifying Payments, PHEAA shall refund any payments in excess of 120 payments to the Borrower. If the Department does not permit refund of the Borrower's actual overpayments, such refund shall be at PHEAA's expense.

(b)     For Borrowers who missed opportunities to make PSLF Qualifying Payments and/or IDR Payments due to any Servicer Error, PHEAA shall provide a Department pre-approved loan account correction that provides relief by overriding payments deemed as non-qualifying to change and record them as PSLF Qualifying Payments and/or IDR Payments to the Borrower's account for all such missed payment opportunities, and by making any payments necessary for such override to be effectuated on the Borrower's behalf directly to the Department.

(c)     For Borrowers who (1) had a Direct Loan or FFEL Loan in discretionary forbearance for 30 or more consecutive months, where any portion of that forbearance was applied by PHEAA; and (2) missed opportunities to make PSLF Qualifying Payments and/or IDR Payments due to any Servicer Error relating to that forbearance,

**EXECUTION COPY**

in addition to the relief available in Paragraph (D)(1)(b), the Borrower shall receive a payment of $100 for each consecutive month in discretionary forbearance beyond 30 months, until the Effective Date.

(d)     For Borrowers who were charged an inaccurate monthly payment amount, the Borrower shall receive a refund of any overpayment plus 9% per annum, calculated from the date of overpayment to a date 30 days following PHEAA's identification of the error.

(e)     For Borrowers whose IDR Plan application was processed more than 30 business days after receipt without a valid intervening hold status, PHEAA will reverse any interest capitalization as a result of the processing delay, refund the interest charged on the capitalized balance, and the Borrower shall receive a payment of $50 for each month of lost IDR Plan eligibility due to the delay.

(f)     For Borrowers who received, in response to the Borrower's inquiry, incorrect information about the Borrower's right to appeal, challenge, or request override of any PHEAA determination related to PSLF or IDR, the Borrower shall receive a payment of $250.

(g)     For Borrowers who received incorrect information from PHEAA about the benefits of consolidation and/or the effects of consolidation on PSLF eligibility, the Borrower shall receive a payment of $100.

(h)     For Borrowers who received incorrect information from PHEAA about the availability of or eligibility for the cancer deferment, the Borrower shall receive a payment of $250.

(i)     For Borrowers who experienced a QP Tracker Delay, the Borrower shall receive a payment of $100 for each month beyond six months after the Borrower's initial request for a detailed payment tracker, detailed payment count, or reasonably equivalent mechanism for tracking the Borrower's total PSLF Qualifying Payments, excluding time during which PHEAA had sought and was awaiting necessary information from the Department or the Borrower's prior servicer, and ending at the earlier of the Borrower's receipt of a detailed payment tracker, detailed payment count, or reasonably equivalent mechanism for tracking the Borrower's total PSLF Qualifying Payments or the Effective Date.

2.     **Alternative Relief:**

(a)     If PHEAA is unable to provide a PSLF Qualifying Payment credit or Department pre-approved loan account correction to the Borrower under Section IV.D.1 based on its standing guidance from

**EXECUTION COPY**

the Department, PHEAA may first seek permission from the Department to grant such relief within 5 days of determining the outcome of the Automatic or Requested Review.

(b)    If the Department fails or refuses to approve PHEAA's request within 30 days, or if PHEAA declines to seek permission from the Department to grant relief, PHEAA shall make a monetary payment to the Borrower calculated by valuing each month in which the Borrower lost the opportunity to make a PSLF Qualifying Payment as equal to 1/12 of 10% of the Borrower's outstanding principal balance on the relevant loan(s) as of the date of the first missed PSLF Qualifying Payment opportunity month, then multiplying that figure by the number of missed PSLF Qualifying Payment opportunity months that occurred: (i) after the Servicer Error, and (ii) during which the Borrower was otherwise in compliance with the other requirements of PSLF. Such payment shall be sent to the Borrower via check on or before 30 days after the expiration of the 30-day period for the Department's consideration.

**E.**    **Result Determination and Award of Relief**

1.    **Result Determination.** Within 10 days after completing each eligible Borrower's Automatic or Requested Review, PHEAA shall send to the Borrower the result of their account review ("Result Determination"). The Result Determination shall be provided in accordance with the Borrower's expressed preferred communication channel, which may include, but not be limited to, electronic communications. The Result Determination shall include the following information:

(a)    The relief the Borrower will receive, if any;

(b)    The reason(s) why PHEAA has determined that the Borrower is or is not entitled to relief;

(c)    Contact information for PHEAA's Office of Consumer Advocacy and the Student Loan Ombudsman at the Department of Education;

(d)    A statement informing the Borrower that they can appeal PHEAA's determination by submitting an Appeal Form to PHEAA within 15 days of receipt of the Result Determination; and

(e)    A copy of the Appeal Form, substantially similar to the form attached hereto as Exhibit 2.

2.    **Award of Relief.** Unless the Borrower submits an Appeal Form to PHEAA within 15 days of receipt of the Result Determination, PHEAA shall provide the relief specified in the Result Determination within 30 days of the

**EXECUTION COPY**

expiration of the Borrower's time to submit the Appeal Form or as otherwise specified in Section IV.D above.

F.      **Appeals**

1.      **Appeal Form.** A Borrower who wishes to dispute the results of their Automatic or Requested Review may request an appeal by submitting an Appeal Form to PHEAA within 15 days of the Borrower's receipt of their Result Determination. Borrowers shall have the option to submit the Appeal Form by mail or electronic upload to PHEAA.

2.      **Conduct of Appeals.** Within 30 days of receiving the Borrower's Appeal Form, PHEAA shall reassess the Borrower's account to determine whether the Borrower was incorrectly denied relief or whether the scope of any relief provided was erroneously narrow. Under no circumstances shall a Borrower Appeal result in a reduction of the relief specified in the Result Determination.

3.      **Appeal Determination.** Within 10 days of completing its review, PHEAA shall send to the Borrower the result of their appeal ("Appeal Determination"). The Appeal Determination shall be provided in accordance with the Borrower's expressed preferred communication channel, which may include, but not be limited to, electronic communications. The Appeal Determination shall include the following information:

(a)      The relief the Borrower will receive, if any;

(b)      The reason(s) why PHEAA has determined that the Borrower is or is not entitled to relief; and

(c)      Contact information for PHEAA's Office of Consumer Advocacy, the Student Loan Ombudsman at the Department of Education, and Hailey DeKraker, Assistant Attorney General, Bureau of Consumer Frauds and Protection, 28 Liberty Street, 20th Floor, New York, New York 10005.

4.      **Award of Relief on Appeal.** PHEAA shall provide each Borrower with the relief specified in their Appeal Determination within 30 days of providing the Appeal Determination to the Borrower or as specified in Section IV.D above.

5.      **NYAG Appeal Review**. At the end of every two calendar months, beginning four months after the Effective Date, PHEAA shall provide to the NYAG a summary report of all appeals resolved since the prior summary report.  For each appeal reported on, the report shall, at minimum, identify (i) a unique identifier for each Borrower, (ii) the date on which the appeal was received by PHEAA, (iii) the nature of the Servicer Error or QP Tracker

**EXECUTION COPY**

Delay determinations appealed, (iv) the resolution of the appeal and (v) the date on which the resolution was communicated to the Borrower. The NYAG shall have the right, at its discretion and within 60 days of receiving the summary report, to request additional information, including the full appeal file, the complete Borrower file (or copy thereof), and any other relevant information, and thereafter to request within an additional 30 days that PHEAA reexamine the appeal and reconsider the resolution thereof.

## V.    OTHER RELIEF

### A.    Retention of Borrower Files

1. **Retention of Certain Files Subject to Review.** To ensure its ability to fulfill its obligations under this Agreement, PHEAA shall identify and retain the full loan account files for all Borrowers with approved PSLF employment, as permitted by contract, until the Automatic Review process is complete.

2. **Transfer of Other Files.** After the loan account file of a Borrower in the Automatic or Requested Review population is transferred to a new servicer, PHEAA shall retain a static copy of such account file until at least 60 days after the Claims Process is complete. If the loan account file of a Borrower in the Automatic or Requested Review Population has already been transferred to another servicer at the time the Review of that Borrower's account is completed, PHEAA shall report any necessary account modifications arising from that review to the Department and the Borrower's new servicer within 30 days of identification of the need for such modifications.

### B.    Enhanced Quality Assurance and Borrower Service

1. PHEAA shall implement enhanced quality assurance review practices designed to identify Servicer Errors, the Borrowers affected by Servicer Errors, and the root causes of Servicer Errors, which shall include the following components:

   (a)    Beginning 30 days after the Effective Date, and for a period of one year following the Effective Date, PHEAA shall increase the size of the population it samples when conducting Quality Assurance sampling relating to IDR Plan and PSLF processing for Borrowers to 5%.

   (b)    For a period of one year following the Effective Date, PHEAA shall broaden the scope of its root cause analysis for non-typographical errors related to PSLF or IDR Plans such that, in instances where any Borrower has been identified as being negatively impacted by a Servicer Error, PHEAA shall seek to identify similarly situated Borrowers affected by a similar Servicer Error.

**EXECUTION COPY**

      (c)      PHEAA shall conduct affirmative outreach to all Borrowers identified as a result of the preceding paragraph.

      (d)      If a Department override or other loan account correction is available to Borrowers identified pursuant to this Section, PHEAA shall provide such Borrowers the override or loan account correction with a notice of explanation.

2.      No less than once every three calendar months, and for a period of one year following the Effective Date, PHEAA shall conduct affirmative outreach to all Borrowers in discretionary forbearance for more than six months regarding the benefits of an IDR Plan and the process for applying for an IDR Plan.

**C.**      **Compliance Monitoring and Reporting**

1.      **Identification of Eligible Borrowers.** Within 7 days after the Effective Date, PHEAA shall provide NYAG with the following lists of Borrowers, each of which shall contain the Borrowers' name(s), mailing addresses, email addresses (if applicable), and telephone number(s):

      (a)      All Borrowers in the Automatic Review Population, separated by subcategory as specified in Section IV.B.1.

      (b)      All Borrowers in the Requested Review Population.

2.      **Ongoing Reporting.**

      (a)      PHEAA shall provide monthly reports to NYAG regarding its progress in administering the Automatic and Requested Reviews.

      (b)      For the Automatic Review, these reports will identify (1) whether the Borrower received relief; (2) if denied, the reason for denial; (3) whether the Borrower appealed; and (4) the Appeal Determination, if any.

      (c)      For Borrowers receiving a Requested Review, these reports will identify (1) all Borrowers who submitted a Claims Form; (2) whether the Borrower received relief; (3) if denied, the reason for denial; (4) whether the Borrower appealed; and (5) the Appeal Determination, if any.

      (d)      PHEAA will provide NYAG with a final report collecting this information in the aggregate within 30 days after the Claims Process is complete.

EXECUTION COPY

    **D.**     **Cooperation with PSLF Waiver**.  PHEAA agrees that it will cooperate with and take all reasonable action to support the PSLF Overhaul for all Borrowers, including the timely provision of information or services related to the PSLF Overhaul and any reasonable action to ensure that Borrowers entitled to relief under this Agreement who, as a result of the receipt of such relief, are entitled to further benefits as a result of the PSLF Overhaul, receive such benefits.

## VI.    NO ADMISSION OR DENIAL

    PHEAA neither admits nor denies allegations of wrongdoing or any liability for the claims asserted in the Complaint.

## VII.    DISMISSAL AND ENFORCEMENT

    **A.**     **Dismissal.** Within two days of its receipt of the fully executed Agreement (including signature by the Office of the Pennsylvania Attorney General), NYAG will dismiss the Lawsuit against PHEAA with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), by filing the Stipulation of Dismissal attached hereto as Exhibit 3.

    **B.**     **Enforcement.** Full compliance with this Agreement resolves and settles all civil claims NYAG has or had against PHEAA based on the allegations and facts set forth in the Complaint. If NYAG demonstrates noncompliance with this Agreement, PHEAA shall, in addition to any other relief, pay NYAG: (1) a sum of up to $10,000 for each student loan account materially affected by PHEAA's failure to comply with the Agreement, and (2) NYAG's reasonable attorneys' fees and costs incurred in pursuing enforcement. The payment provided in this paragraph shall be made by wire transfer (pursuant to instructions to be provided by the NYAG), or by certified or cashier's check made payable to the State of New York and delivered to Hailey DeKraker, Assistant Attorney General, Bureau of Consumer Frauds and Protection, 28 Liberty Street, 20th Floor, New York, New York 10005.

    **C.**     **Waiver of Defenses**. PHEAA expressly waives all defenses in any proceeding to adjudicate compliance with, or for enforcement of, this Agreement, except the defense that PHEAA has performed the Agreement by its terms. This includes defenses related to subject matter jurisdiction, personal jurisdiction, and venue.

    **D.**     **Provision of Information.** For a period of two years following the Effective Date, to the extent not already provided under this Agreement, PHEAA shall, upon request by NYAG, provide all documentation and information necessary for NYAG to verify compliance with this Agreement and to effectuate the terms of this Agreement.

EXECUTION COPY

## VIII.   ADDITIONAL PROVISIONS

A.   **Drafting.** The Parties agree that no single Party will be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentem*. This Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement will be neutral, and no ambiguity will be construed in favor of or against any of the Parties.

B.   **Entire Agreement.** This Agreement contains the entire Agreement and understanding of the Parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings, if any, with respect hereto, whether oral or written.

C.   **Amendment.** This Agreement may not be amended, altered, modified, or otherwise changed except in a writing executed by all of the Parties or their successors in interest expressly stating that it is an amendment to this Agreement. The Parties will not make any claims, and hereafter waive any right they now have or may hereafter have based upon any oral alteration, oral amendment, oral modification, or other changes of this Agreement not in writing.

D.   **Headings.** The headings of the Sections of this Agreement are included for convenience only and will not be deemed to constitute part of this Agreement or to affect its construction.

E.   **Interpretation.** As used in this Agreement, the masculine, feminine, or neutral gender, and the singular or plural number, include the others where the context so indicates.

F.   **Counterparts.** The Parties agree that this Agreement may be executed in counterparts, and that copies, facsimiles, and electronic copies of this Agreement shall have the same force and effect for all purposes as the original.

G.   **Facsimile and Electronic Signatures.** Facsimiles and PDF versions of signatures on this Agreement will be deemed to be original signatures and will be acceptable to the Parties for all purposes. In addition, transmission by electronic mail of a PDF document created from the originally signed document will be acceptable to the Parties for all purposes.

H.   **Impossibility of Performance.** In the event that any Party cannot perform under this Agreement due to force majeure, an act of State, or it becomes unlawful or impossible to perform despite the Party's best efforts, the Parties are obligated to negotiate in good faith and use their best efforts to develop a substitute manner of performance. A Party is obligated to notify all other Parties as soon as practicable upon receiving notice of a reasonable likelihood of the impossibility of its performance as described in this clause.

14

EXECUTION COPY

I.    **Waiver of Breach.** The waiver by one Party of any breach of this Agreement by any other Party will not be deemed as a waiver of any other prior or subsequent breaches of this Agreement. Further, any failure by NYAG to insist upon the strict performance by PHEAA of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and NYAG, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement to be performed by PHEAA.

J.    **Communications.** All notices, reports, requests, and other communications pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier, or electronic mail at an address designated in writing by the recipient, followed by postage prepaid mail, and shall be addressed as follows:

    If to PHEAA: to James Jarecki, Deputy Chief Counsel, or in his absence, to the person holding the title of Deputy Chief Counsel.

    If to NYAG: to Hailey DeKraker, Assistant Attorney General, or in her absence, to the person holding the title of Bureau Chief, Consumer Frauds and Protection.

K.    **Representations and Warranties.** Each counsel and other person executing this Agreement or any related settlement documents on behalf of any Party hereto hereby warrants and represents to the other Parties hereto that such counsel or other Person has the authority to execute and deliver this Agreement and related settlement documents, as applicable.

L.    **Entry into Agreement.** PHEAA acknowledges that it has entered into this Agreement freely and voluntarily and upon due deliberation with the advice of counsel.

M.    **Survival.** The Parties agree that the terms set forth in this Agreement will survive the signing of this Agreement.

N.    **Effect of Monetary Payments.** Where PHEAA is required to make monetary payments to Borrowers under this Agreement, the fact of such payment does not: (1) imply that any determination has been made that the Borrower will qualify for loan forgiveness under the PSLF; and/or (2) impact the Borrower's obligations under their loan(s), including to make all required payments.

O.    **Third Parties.** This Agreement does not affect the rights or liabilities of any person or entity not a party to the Lawsuit, except with respect to any relief provided to Borrowers as required under this Agreement. Nothing contained herein shall be construed as to deprive any person of any private right under the law.

**EXECUTION COPY**

    **P.**    **Other Federal Student Loan Servicers.**  None of the relief required under this Agreement shall be binding on other federal student loan servicers. Notwithstanding the foregoing sentence, the inability or unwillingness of other federal student loan servicers to provide relief any Borrower would be entitled to under this Agreement shall not relieve PHEAA of its obligations under this Agreement.

    **Q.**    **Cooperation.** The Parties shall fully cooperate with one another in the implementation of this Agreement.

    **R.**    **Fees and Costs.** Except as otherwise set forth in Section VII, the Parties shall bear their own attorneys' fees and costs.

*[Signatures follow on next page.]*

**EXECUTION COPY**

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement and/or have caused this Agreement to be executed by their duly authorized representatives on the dates set forth below.

PEOPLE OF THE STATE OF NEW YORK
LETITIA JAMES, ATTORNEY GENERAL

By: _Jane M. Azia_____

Jane Azia
Hailey D. DeKraker
Christopher L. Filburn
Bureau of Consumer Frauds & Protections
Office of the New York Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-6315
Jane.Azia@ag.ny.gov
Hailey.DeKraker@ag.ny.gov
Christoper.Filburn@ag.ny.gov

THE PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY

By: _James H. Steeley_____

Name: _James H. Steeley_____

Title: _President and CEO_____

Date: _3/24/2022_____

Approved as to form and legality

Approved as to form and legality

_Jean Svoboda_____

_____
Deputy Attorney General
Commonwealth of Pennsylvania

Jean Svoboda
PHEAA Chief Legal Officer

Date: _4/21/22_____

Date: _3/24/2022_____

17

[FedLoan Logo]

[Date]

[Borrower Name and Address]

[Borrower Account Number]

Re: Opportunity to Request a Review of Your Account

Dear Borrower:

FedLoan Servicing and the People of the State of New York, by and through their Attorney General, Letitia James have entered into a Settlement Agreement that resolves a lawsuit titled *People of the State of New York v. Pennsylvania Higher Education Assistance Agency, d/b/a Fedloan Servicing and American Education Services*, Case No. 19-cv-9155 (ER), filed in the United States District Court for the Southern District of New York. A link to the Complaint filed in the lawsuit, the Settlement Agreement, Frequently Asked Questions, and a copy of this Notice are available here [link pending].

You are receiving this Notice and the attached Claims Form because our records indicate that you are a current resident of New York whose federal student loans were serviced by FedLoan Servicing as of December 1, 2021. As part of the resolution of the lawsuit referenced above, you are entitled to request that FedLoan Servicing review your loan account if you believe FedLoan Servicing has made an error relating to your participation in the Public Service Loan Forgiveness ("PSLF") program, your request for an Income Driven Repayment ("IDR") plan, or certain other types of inquiries you may have made. **Based on the outcome of FedLoan Servicing's review, you may be entitled to corrections to your loan account or monetary compensation.**

To request a loan account review, please submit the "Claims Form" accompanying this Notice by signing in to your online account at MyFedLoan.org and uploading your form. Even if your loans have been transferred to another servicer, you can still access the FedLoan Servicing portal using the same credentials that you previously used. You may also mail your completed form to the following address:

> FedLoan Servicing
> P.O. Box [to be determined]
> Harrisburg, PA 17106-9184

**To be considered, you must submit the Claims Form <u>within 45 days</u> from the date you received this Notice.** If submitting via mail, this Claims Form must be postmarked within 45 days of your receipt of the Notice.

Please note that you may check more than one box on the Claims Form, and while the Claims Form includes a section entitled "Additional Information," you do not need to fill out this section in order to submit your Claims Form or in order to obtain a loan account review. If you have a specific concern that you would like to raise, or additional information that you believe is relevant, you may include it to assist FedLoan Servicing in its account review.

You will receive a response from FedLoan Servicing acknowledging your Claim within 3 business days, and you will receive a letter explaining the results for your Claim within 90 days. If your

Claim is denied, you will have an opportunity for additional review, and you will receive a second notice with instructions regarding that process.

      If you have questions about this Notice or the Claims process, you may contact FedLoan Servicing at the following dedicated point of contact:

**By Phone:**     **[to be determined]**
**By Mail:**       **FedLoan Servicing**
                    **P.O. Box [to be determined]**
                    **Harrisburg, PA 17106-9184**

[Borrower Name and Address]
[Borrower Account Number]

> Re:    *People of the State of New York v. Pennsylvania Higher Education Assistance Agency, d/b/a Fedloan Servicing and American Education Services*, Case No. 19-cv-9155 (ER) (S.D.N.Y)

# Claims Form

To obtain an Account Review, **you MUST check one or more of the boxes below and return this form to FedLoan Servicing** by signing in to your online account at MyFedLoan.org and uploading your form. Please select "Other" in the category menu for uploading. You may also submit your Claims Form by mailing your completed form to:

> FedLoan Servicing, P.O. Box [to be determined]
> Harrisburg, PA 17106-9184

**You must submit this Claim within 45 days of your receipt of your Notice.** If submitting via mail, this Claims Form must be postmarked within 45 days of your receipt of the Notice.

☐    I believe I received inaccurate information from FedLoan Servicing about: (**<u>Check any that apply</u>**):

   ☐    My eligibility for an Income Driven Repayment ("IDR") Plan

   ☐    Whether my employer or prospective employer qualifies for Public Service Loan Forgiveness ("PSLF")

   ☐    Whether my student loan qualifies for PSLF

   ☐    My right to appeal or challenge a determination by FedLoan Servicing relating to PSLF or IDR

   ☐    The benefits of loan consolidation and/or the effects of consolidation on PSLF

   ☐    The availability of, or my eligibility for, a cancer deferment

☐    I believe my PSLF and/or TEPSLF ("Temporary Expanded PSLF") Application for Loan Forgiveness was erroneously denied.

☐    I believe my PSLF Employer Certification Form was erroneously denied.

☐    I believe I was erroneously placed into forbearance or deferment by FedLoan Servicing.

☐    I believe my monthly payment amount was incorrectly calculated by FedLoan Servicing.

☐       I believe I missed an opportunity to make PSLF-qualifying payments or IDR payments due to a delay in FedLoan's processing of my IDR request.

☐       I believe I requested a detailed payment count concerning my PSLF payments and did not receive a response to my request within 6 months.

☐       Other (please describe)

_____

_____

_____

_____


**Additional Information**

If you have additional information that you believe would assist FedLoan Servicing in its account review, please list the information below.

_____

_____

_____

_____


**Method of Contact**

We may have questions regarding your Claim or need additional information to review it. If your preferred method of contact for your claim differs from the contact information used to send this Notice, please list your preferred method of contact below:

_____

_____

_____

_____

[Borrower Name and Address]

[Borrower Account Number]

Re:   *People of the State of New York v. Pennsylvania Higher Education Assistance Agency, d/b/a Fedloan Servicing and American Education Services*, Case No. 19-cv-9155 (ER) (S.D.N.Y)

# Account Review Outcome and Appeal Form

This Notice relates to the Claims Form you previously submitted requesting that FedLoan Servicing ("FedLoan") conduct a review of your student loan account to determine whether a servicing error occurred on your account.

FedLoan has completed your review. [Description of outcome and, if applicable, relief.]

**IF YOU DISAGREE WITH THE OUTCOME OF FEDLOAN SERVICING'S REVIEW, YOU MAY APPEAL BY SUBMITTING AN APPEAL TO FEDLOAN WITHIN 15 DAYS. PLEASE PROVIDE INFORMATION IN THE SPACE BELOW DESCRIBING YOUR APPEAL AND THE REASON YOU DISPUTE THE OUTCOME.**

**Please complete this form and return it by either uploading it to your online account at MyFedLoan.org or mailing it to FedLoan Servicing, P.O. Box [to be determined], Harrisburg, PA 17106-9184.**

_____

_____

_____

_____

_____

_____

If you have any questions, please contact FedLoan at [dedicated number].

You may also contact PHEAA's Office of Consumer Advocacy at 1-800-213-9827, the New York Attorney General's Office at [number], or the Student Loan Ombudsman at the U.S. Department of Education at 1-877-557-2575.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES,
Attorney General of the State of New York,

Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY, d/b/a
FEDLOAN SERVICING and AMERICAN
EDUCATION SERVICES,

Defendant.

Civil Action No. 19-cv-9155

<u>**STIPULATION OF DISMISSAL WITH PREJUDICE**</u>

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned

counsel on behalf of all parties in the above-captioned action, that pursuant to Federal Rule of

Civil Procedure 41(a)(1)(A)(ii) all claims in the above-captioned action are hereby DISMISSED

WITH PREJUDICE. Each party shall bear its own costs, expenses, and attorney's fees, except as

stated in the parties' settlement agreement.

1

Dated: _____, 2022


Respectfully submitted,


_____          _____
Jane M. Azia                            Thomas F. Burke (4594230)
Hailey D. DeKraker                      Brittany M. Wilson (*admitted pro hac vice*)
Christopher L. Filburn
**BUREAU OF CONSUMER FRAUDS AND**       **BALLARD SPAHR LLP**
**PROTECTION**                          1735 Market St., 51st Floor
28 Liberty Street                       Philadelphia, PA 19103-7599
New York, NY 10005                      Telephone: (215) 864-8500
Telephone: (212) 416-6250               Facsimile: (215) 864-8999

*Attorneys for Plaintiff the People of the*     Marjorie Peerce (1921683)
*State of New York, by Letitia James,*          **BALLARD SPAHR LLP**
*Attorney General of New York*                  1675 Broadway, 19th Floor
                                                New York, NY 10019
                                                Telephone: (646) 346-8039

                                        *Attorneys for Defendant Pennsylvania*
                                        *Higher Education Assistance Agency*